# Sheets' Estate—Appeals of John A. J. Sheets, *et al.*

1. A testator gave all his estate, real and personal, to his children, share and share alike, ordering his executor to invest it, so far as converted into money, and pay the interest, &c., and the rents, &c., to his children annually during life, and after the death of any child, the principal to be paid over to such child's children: followed by the proviso that if any of his "said children should die without issue, the share, purpart or dividend of such heir shall be equally divided amongst the survivors or the children of the survivors of such survivor." He also authorized his executor at his discretion to sell his real estate, invest the proceeds, and pay the interest as before directed. *Held*, that the children of the testator took but a life interest in both real and personal estate, with remainder in fee to their children.

2. The ultimate limitation in default of issue of the children, took effect as an executory devise or an alternative limitation, not as a remainder.

3. If a testator gives an absolute interest either in lands or personalty, and afterwards unequivocally shows that he means the donee to take a less estate, the prior gift will be so restricted.

4. Subsequent provisions will not take from an estate previously given qualities inseparable from it, *e. g.* alienability; but they may define the estate given, and show that what might be a fee, was intended to be a less right.

2 P. F. Smith—17

| | |
|---|---|
| 52 | 257 |
| 133 | 351 |
| 133 | 358 |
| 52 | 257 |
| 135 | 172 |
| 52 | 257 |
| 144 | 291 |
| 52 | 257 |
| 148 | 578 |
| 52 | 257 |
| 160 | 263 |
| 52 | 257 |
| 176 | 131 |
| 52 | 257 |
| 184 | 223 |
| 52 | 257 |
| 200 | 291 |
| 52 | 257 |
| 209 | [3] 62 |
| 52 | 257 |
| f 211 | [3]302 |
| f 211 | [3]304 |
| 27 SC | 361 |
| 52 | 257 |
| 216 | 533 |
| 217 | [7]488 |
| 52 | 257 |
| f40SC[3] | 83 |

[Sheets' Estate.]

5. A limitation over on the death of the first taker, or a direction that the interest of money or the rent, &c., shall be paid annually to him for life, or a power of sale to another with an order to invest the proceeds for the first taker's life and afterwards over, is evidence that he has but a life interest.

6. A power to sell and invest, and pay at stated intervals, cannot co-exist with absolute ownership in another than the donee of the power.

7. To create a trust, the trustee need not be so named: his character is to be determined by the duties and powers conferred.

8. The power and duty to invest an estate, to pay its income and preserve the estate for the remainder-men, are those of a trustee, and not of an executor merely.

9. A bequest of personalty to one for life, remainder to his "*heirs*," may give the first taker an absolute interest, a remainder to "*issue*," will not.

10. In gifts of personalty, "issue" has a different meaning from that which it has in devises of realty. The remainder-men take as purchasers.

11. Both as to personalty and realty, when an absolute interest is given in remainder after a life estate, to the children of the first taker, a limitation over on default of his issue does not raise an estate tail by implication. "Issue" means such issue, that is, children.

THESE were appeals from decrees of the Orphans' Court of *Lycoming county*.

The first was by John A. J. Sheets, Elizabeth Sheets, Catharine Sheets, Mary Hively, Henrietta McCormick, Julia Strebeigh, and Margaret McMurray, children of John Sheets, deceased, from a decree awarding partition of his real estate upon the petition of Julia E. Sheets, widow of Thomas E. Sheets, who was another child of said deceased.

The other was by John A. J. Sheets, executor, &c., of John Sheets, deceased, from the decree confirming the report of the auditor on his account as executor. The testator died in April 1862, leaving a widow, Catharine Sheets and eight children, viz., the appellants (in the first appeal), and said Thomas E. Sheets, deceased, and owning several pieces of real estate and considerable personal property. His will, proved May 1st 1862, after directing the payment of his debts and funeral expenses, was as follows :—

" I give and bequeath to my dear wife Catharine, all that the provisions of the laws of Pennsylvania would have given her if I had died intestate, and I moreover direct that a suitable and convenient dwelling-house shall be fitted up for her residence at the expense of my estate, and to be occupied by her free of any charge for rent. Item—I give and bequeath the whole of my estate, real, personal and mixed, wherever situate, to my sons, John A. Sheets, Thomas E. Sheets, and to my daughters, Elizabeth Sheets, Catharine Sheets, Mary, intermarried with Henry Hively, Henrietta, intermarried with Robert McCormick, Julia, intermarried with Thomas J. Strebeigh, and Margaret, intermarried with William McMurray, share and share alike, except that my daughter Elizabeth shall have one thousand dollars over and above my other children, all which shall be invested by my exe

cutor hereinafter named, so far as the same shall be converted into money, and the interest of the money so invested, as well as the rents, issues and profits of my real estate shall be paid over to my said children annually during their respective lives; and after the death of any one or more of my said children the *principal* of such deceased child shall be paid over to the children of such deceased child. Provided, however, that if any of my said children should die without issue, the share, purpart or dividend of such heir shall be equally divided amongst the survivors or children of the survivors of such heir. And provided further, that this bequest is made to my said children, subject to the bequest hereintobefore made to my said wife, subject to the payment of all just claims against my estate, subject to the payment of my funeral expenses, which shall be at the discretion of my executor, and subject to the payment of one thousand dollars to my grandson, Andrew Jackson Neil, a son of my daughter Agnes, who was intermarried with Robert Neil. Item—I do hereby authorize and empower my executor hereinafter named, at his discretion, to sell and convey the whole or any part of my real estate, the proceeds of sale to be invested, and the interest thereon paid as hereinbefore directed. My daughter Catharine being incompetent to manage her own business, I do hereby appoint my son, John A. Sheets, trustee, to take and receive her shares and dividends of my estate, and to apply the same to her maintenance at his own discretion. Provided, however, that in the event of the death of my said son, John A. Sheets, no one who may be appointed administrator *de bonis non*, with the will annexed, shall exercise any authority over the fund bequeathed to my said daughter Catharine, nor sell and dispose of any part of my real estate, without first giving security, to be approved by the judges of the Orphans' Court of the proper county. And it is further my will, and I do order, that no charge shall be made against any of my children for any advancements of money, goods or furniture heretofore made to them, or any of them, nor against my said son John A. Sheets, for any money advanced or loaned to him individually to enable him to go into business. But any money loaned to the firm of Norcross & Sheets shall be accounted for, and form part of the assets of my estate."

He appointed his son, John A. Sheets, executor.

One of the sons, Thomas E., died July 2d 1863 (having been killed at the battle of Gettysburg), intestate and without issue, but leaving to survive him a widow, the said Julia E. Sheets. On the 6th of July 1864, Catharine, the widow of the testator, being alive, Julia, as widow aforesaid, presented her petition to the Orphans' Court, setting forth that her husband died intestate, seised in fee of an undivided eighth part, with his above-named brothers and sisters, of several pieces of land, describing them,

[Sheets' Estate.]

and averring her right as his widow, prayed the court to call in all "the said parties having an interest in the said premises, and to order an inquest to value the share or interest of the petitioner, as widow aforesaid, in the same, having reference to the said intestate's purpart." The court granted a citation accordingly; the brothers and sisters answered, averring that Thomas did not die seised in fee of the one-eighth part of the lands as mentioned in the petition; that he was not in his lifetime, nor is his widow, entitled to any share in the same, and denying that the Orphans' Court had jurisdiction in the premises.

The parties afterwards submitted to the court a case stated, setting out all the facts, the court to make such orders and decrees in this cause, upon the facts stated, as shall be required by law; and each party reserves the right to appeal to the Supreme Court from the final decree of the said Orphans' Court.

The court (Jordan, P. J.), held that the children of John Sheets took an estate tail under the will, which by the Act of 1855 was converted into a fee, and, December 29th 1864, decreed "that a writ of partition be issued, directed to the sheriff, to value and appraise the interest of the widow of Thomas A. Sheets in the lands of which he died seised under the will of his father, John Sheets, which interest the court find to be one-eighth, and the interest of the widow of Thomas one-sixteenth. That the dower of the widow of John Sheets in the said one-sixteenth is one-third, equal to one-forty-eighth."

April 15th 1865, the inquest returned that "they value the share or interest of Julia E. Sheets, the widow of Thomas Sheets, in the several tracts of land mentioned and described in said writ, at $1031.25, subject, however, to the dower of Catharine Sheets, Sen., the widow of John Sheets, deceased." The inquest, September 2d 1865, was confirmed absolutely.

The errors assigned were, awarding partition and confirming the inquisition.

In the other appeal the executor filed his administration account January 20th 1864, to which a large number of exceptions were filed, and it was referred to an auditor. The questions before him arose principally on the construction of the will of John Sheets. The auditor adopted the opinion of the court as given above, and reported that the children took an absolute interest in the personal property, and on that ground sustained the exceptions, which depended upon the construction of the will. Exceptions were taken to his report, which were overruled by the Orphans' Court, and the report confirmed.

The errors which raised the questions in the Supreme Court were, that the court erred in overruling the exceptions to the report of the auditor, which are

"1. The auditor erred in his construction of the will of John

[Sheets' Estate.]

Sheets, deceased, in deciding, that the executor was not authorized to invest the funds of the estate; and pay the interest thereon annually to the heirs, as provided for in the will, and in deciding, that under the will the heirs took the personal estate absolutely.

" 2. The auditor erred in deciding that the executor had no authority, under the will, to make investments of the money of the estate, to pay money to the widow of the testator, to carry on the farming business, to retain part of the personal property, for farming purposes, nor to pay over any money to any of the devisees, except by direction of the Orphans' Court."

*J. & W. H. Armstrong*, for appellants.—The same language has a different signification as applied to realty and personalty : Scott *v.* Price, 2 S. & R. 59 ; Ralston *v.* Waln, 8 Wright 279. When the limitation over is to children so that in realty they would take as purchasers, the first taker of personalty would have only a life estate : Smith's Ex. Int. § 479, &c., 547, 600. When the further limitation over is to survivors as to the shares of any who " should die without issue," the latter words are taken to mean the same as " children:" Smith, § 547 ; Ellis *v.* Selby, 7 Sim. 352 ; and are taken to refer to a default of children at the death of the first taker : Smith § 600 ; Guthrie's Appeal, 1 Wright 9 ; Chew's Appeal, Id. 23. Kay *v.* Scates, Id. 31, has fallen with Kuhn *v.* Newman : Barnett's Appeal, 10 Wright 406 ; Myers' Appeal, 13 Id. 112 ; Knight *v.* Ellis, 2 Bro. C. C. 570. As to the realty : the children took an estate for life, remainder to their children : Miller *v.* Lynn, 7 Barr 443 ; Gernet *v.* Lynn, 7 Casey 95 ; Doe *v.* Provost, 4 John. 61 ; Wilde's Case, 6 Co. 17 ; 7 Casey 98 ; 2 Jarm. on Wills 307 ; Smith on Ex. Int. §§ 397, 479, 541, 547 ; Goodright *v.* Dunham, Doug. 251 ; Ellis *v.* Selby, 7 Sim. 352 ; Curtis *v.* Longstreth, 8 Wright 297 ; Walker *v.* Milligan, 9 Id. 179 ; Powell *v.* Board of Missions, 13 Id. 56, 57, 58 ; Finley *v.* Riddle, 3 Binn. 139 ; Doe *v.* Perryn, 3 T. R. 483 ; Smith Ex. Int., § 703.

The estates given to the children for life and those limited over are of different qualities and could not coalesce : 2 Jarm. on Wills 244, 266 ; Crosby *v.* Davis, 4 Pa. L. J. 193 and 198 ; 4 Cruise 379 ; Tippan *v.* Casar, Carth. 272 ; Say & Sele *v.* Jones, 3 Bro. Par. C. 113 ; 1 Eq. Cas. 383 ; Shopland *v.* Smith, 1 Bro. R. 75 ; Silvester *v.* Wilson, 2 T. R. 449.

This was an active trust for Thomas during his life, and he had but an equitable title : Barnett's Appeal, 10 Wright 392 ; Girard Life Ins. Co. *v.* Chambers, Id. 485.

*J. W. Comly, S. C. Wingard* and *H. C. Parsons*, for appellees.—The power of sale being discretionary could not operate as a conversion till exercised, and Thomas having died before any

sale, his widow's right to dower is vested: Chew *v.* Nicklin, 9
Wright 84. The word "principal" never applies to realty, and
here means personalty and such land as might be sold under the
power.

The gift of rents, issues and profits of land for life gives an
estate for life, if a fee had not been previously given: 2 Jarm.
on Wills 534; Silknitter's Appeal, 9 Wright 365; Bendle *v.*
Flinn, 2 Grant 345; McKee *v.* McKinley, 9 Casey 92; Criswell's
Appeal, 5 Wright 288; Haldeman *v.* Haldeman, 4 Id. 29;
Angle *v.* Brosius, 7 Id. 187; Curtis *v.* Longstreth, 8 Id. 297;
Lapsley *v.* Lapsley, 9 Barr 130. In doubtful cases the law leans
to absolute rather than defeasible estates: Amelia Smith's Appeal,
11 Harris 9; Criley *v.* Chamberlain, 6 Casey 161. The terms
of the will as to personalty gave an absolute estate to the child-
ren: Train *v.* Fisher, 15 S. & R. 145; Amelia Smith's Appeal,
*supra;* Pott's Appeal, 5 Barr 500; Myers' Appeal, 13 Wright
112.

The opinion of the court was delivered, May 15th, 1866, by

STRONG, J.—The questions raised by these appeals are all de-
pendent for their solution upon the construction due to the will of
John Sheets, deceased. By that will the testator, after making
provision for his widow both in realty and personalty, gave and
bequeathed the whole of his estate, real and personal, to certain of
his children, naming them, share and share alike, directing, how-
ever, that one of his daughters should have a thousand dollars more
than the other children; all which he ordered should be invested
by his executor thereinafter named, so far as the same should be
converted into money, and the interest of the money so invested,
as well as the rents, issues and profits of his real estate, he
directed to be paid over to his said children annually during their
respective lives, and after the death of any one or more of his
said children, the principal of such deceased child should be paid
over to the children of such deceased child: All this was in one
sentence, a single disposition. It was followed immediately by
the proviso, that if any of the said children should die without
issue, the share, purpart or dividend of such heir should be equally
divided amongst the survivors or "the children of the survivors
of such heir." Another proviso declared that this "bequest to
his children was made subject to the payment of all just claims
against his estate, to the payment of funeral expenses, to the
'bequest' before made to the widow, and subject also to the pay-
ment of one thousand dollars to a grandson, a child of a daughter
who was not named among the beneficiaries of the will, and who
was probably deceased." Next the testator authorized and em-
powered his executor afterwards named, at his discretion, to sell
or convey the whole or any part of his real estate, the proceeds

of sale to be invested and the interest thereof paid as before directed.

He then appointed his son, John A. Sheets, trustee, to take and receive Catharine's share and dividend, and to apply the same to her maintenance, at his discretion (Catharine being incompetent to manage her own business). John A. Sheets was then named sole executor, and the testator ordered that in the event of the death of the executor no one who might be appointed administrator *de bonis non* should exercise any authority over the fund bequeathed to his daughter Catharine, or sell and dispose of any part of his real estate without giving security to be approved by the Orphans' Court of the proper county. Under this will the court below adjudged that the children of the testator took an estate in fee simple in the land devised and an absolute interest in the personalty. We are unable to concur in such a construction. The will is inartificially drawn. The language appropriate to gifts of personalty is applied to devises of realty, and there is much confusion in the arrangement of the testamentary disposition.

It is difficult to determine to whom the estate was intended to pass by the final alternative limitation in case it shall ever take effect. A part of the obscurity is to be attributed to the fact that the realty and personalty were blended in the mind of the testator as they are generally in the will. It is, however, possible to gather with reasonable certainty the intention respecting the nature and quantity of interests given to the children, if we look for it, as we must, through the whole instrument, rather than to a single disjointed part. A will must be construed as an entirety, so that, if possible, every part of it may take effect. Hence, the independent meaning of one provision must often be modified by reading it in connection with others. The gift by the testator to those of his children whom he named of his whole estate, real, personal and mixed, in absolute ownership, is not to be made out but by severing a part of a sentence from the remainder and also from the succeeding parts of the will in which he directed the nature, extent and mode of enjoyment, which he contemplated.

It may be that if the first clause of the sentence stood alone, it would give a fee simple to those children in the real estate, and an absolute interest in the personal property. But in the same sentence, as well as in those that follow it, the testator has declared in effect that such was not his intention. No principle is better settled than that if a testator in one part of his will give to a person an estate of inheritance of lands, or an absolute interest in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a lesser interest only, the prior gift is restricted accordingly. Subsequent provisions will not avail to take from an estate previously given,

[Sheets' Estate.]

qualities that the law regards as inseparable from it, as, for example, alienability ; but they are operative to define the estate given, and to show that what without them might be a fee, was intended to be a lesser right : 1 Jarman on Wills 416. And especially is this so when, as in this case, the prior gift is made in words which in themselves only raise a presumption of a fee, when there are no words of limitation. The principle is not only a rule of the common law ; it is recognised in the 9th section of our Statute of Wills. Both the admitted rules of legal construction and the statute regard a limitation over after the death of the first taker, as evidence of an intention that the devisee or legatee of the prior estate in order of enjoyment is to have no more than an estate or interest for life. So is a direction that the interest of money, or the rents, issues and profits shall be paid annually to him for life. And so is a power of sale given to another, accompanied by an order that the proceeds shall be invested during the life of the first beneficiary, and afterwards paid over to another donee. The second of these dispositions may not of itself be sufficient to overcome the force of a prior gift of a fee in express words, as was held in Silknitter's Appeal, 9 Wright 365. In that case there was not only a gift to the beneficiary, her heirs and assigns, but the absence of any gift over. But it has not been doubted that a limitation over after the death of the first taker, and a power of sale in another, with directions to invest and pay the interest to the beneficiary during life, and after his death the principal over, are utterly inconsistent with the existence of a fee, or absolute interest in such a donee. They are not only inconsistent, but they will reduce a fee expressly devised to an estate for life. All these things are found in the present will. The testator appointed an executor, and committed to him the administration of all the personal property. There are no specific bequests or devises. The executor not only has the power, but it is his duty to convert the personalty into money in order to execute the will, and when thus converted it is made his duty not to pay it to the children named, but to invest it and pay them the interest during their respective lives, and after the death of any one of them, to pay the share of that one to the children of such decedent or the survivors. How are these duties to be performed if the children of the testator take absolutely the entire ownership ? How is the executor in such a case to invest and pay interest annually ? How is he after the death of a child to pay the principal to a grandchild? It is impossible. These directions of the will are wholly irreconcilable with any construction that asserts an absolute interest in the personalty to have been given to a child of the testator. The decree of the Orphans' Court strikes them out of the will, or renders them entirely inoperative.

[Sheets' Estate.]

And so with regard to the real estate. Not only is it blended with the personalty, given in the same words, but the rents, issues and profits are to be paid over annually to the children of the testator during their respective lives. How are they thus to be paid if these children take a fee simple in the realty? And how, after the death of any such child, is the principal to be paid to his children? If there be a fee simple in the first takers the rents cannot be under the control of the executor. The devisees can destroy them or dispose of them at their pleasure. The proviso for annual payments to them is idle. It need not be said that the executor is to execute the will, and that he has all the power necessary to enable him to carry out the directions of his testator. Besides the direction to pay the rents, issues and profits annually during life, there is another distinct provision which is very significant. It is that by which authority and power are given to the executor, at his discretion, to sell and convey the whole or any part of the real estate, the proceeds of sale to be invested and the interest thereon paid as directed, in regard to the interest of the personalty and the rents of the real estate, that is, annually during the life of the testator's children. This is utterly inconsistent with the existence of an estate of inheritance in those children. A power to sell and invest and pay at stated intervals cannot co-exist with absolute unfettered ownership in another than the donee of the power.

It was well said by the auditor in one of these cases that "it is difficult to see how the executor could convert an estate into money which had been absolutely and unconditionally given to the testator's children." It is more than difficult, it is impossible. Yet the executor may do more than sell and convert. He is to invest the proceeds, if he sells, and pay the interest annually to the children during their lives. The eminent counsel for the appellees during the argument appeared to feel the force of this provision, and to break its effect, contended at one time that the clause is an indirect mode devised by the testator to prevent alienation by the children. It is, however, palpably nothing of the kind. The testator manifested no intention to keep his estate from passing out of his family, and this clause of the will facilitated alienation. Again, it was urged that the provision should be disregarded as unmeaning, or if not so, conflicting with the former part of the will. We are not at liberty, however, to deny effect to any portion of the testator's expressed intention. We must construe it so that the whole may stand. And, in our opinion, there is nothing in this clause that is not consistent with a reasonable interpretation of every other direction in the will. It is inconsistent only with the assumption of the appellees. They begin with the postulate that the children took a fee simple by the words of a part of the first sentence next succeeding the gifts to the

widow, severed from their connection, and they argue from this the impossibility of there being any rights in the grandchildren or in the executor inconsistent with such a fee. But the very question to be answered is what estate did the children take.

It is not to be answered by a *petitio principii.* The clause under consideration is consistent with a gift of the interest of the money arising from sales and of the rents, issues and profits of what remains unsold to the children for life, and consistent with no other construction of the gift. If then, it is to have any meaning, it must be regarded as evincive of the testator's intention that the children should have only an estate for life in the realty and that the executor should have the management of the estate, paying over the profits annually to the devisees of the life interest.

Against this construction it is urged that it makes the executor a trustee of all the property of the testator without any words constituting him a trustee, while there is a provision in the will creating a trust for Catharine, one of the daughters, which, by implication, negatives the existence of any other. If by this it is meant that the executor is not called a trustee for any other child than Catharine, it is true. But this is not essential to the creation of a trust. One may be made a trustee without calling him such, as readily as a trust can be created without nominating any one to perform it. To determine whether there is a trust we are to look, not at the title given, but at the powers and duties conferred. There is no magic in the word trustee. No particular form of words is necessary to make a trust. It was said by Lord Eldon, "that the word trust not being made use of is a circumstance to be attended to, but nothing more, and if the whole frame of the will created a trust for the particular purpose of satisfying which the estate is devised the law is the same, though the word 'trust' is not used:" King *v.* Dennison, 1 V. & B. 273.

The duties imposed and the powers given to the executor in the will now before us, are such as necessarily to constitute him a trustee. They reach much beyond mere administration. As already observed, he is empowered to sell at his discretion all the real and personal property. What is the effect of this? By the Act of Assembly of February 24th 1834, § 13, P. L. 75, it is enacted, that the executors of the last will of any decedent, to whom is given thereby a naked authority only to sell any real estate, shall take and hold the same interest therein, and have the same power and authorities over such estate, for all purposes of sale and conveyance, and also of remedy by entry, by action, or otherwise, as if the same had been thereby devised to them to be sold, saving always to every testator his right to direct otherwise. This statute, it has been held, makes such executors seised of the land for the uses of the will: Cobb *v.* Biddle, 2 Harris 444.

And there is much more here than this statutory interest. The power and duty to invest both personalty and the proceeds of realty, the direction to pay its income annually, as well as the rents of the lands unsold, and the duty to preserve for the remainder-men after the death of the children, are all powers and duties of a trustee. They cannot be performed unless there is a trust. They do not belong to the office of an executor merely.

And if a trust, it is too late to argue that it is executed in the beneficiaries. The duties to be performed by the trustee are of such a nature as to forbid it. They are continuing and active, and they are necessary to preserve the remainders. The trust would hardly be stricken down under the doctrine of Kuhn v. Newman, 2 Casey 227. Much less can it be disregarded now that Kuhn v. Newman has been overthrown by Barrett's Appeal, 10 Wright 393.

There is nothing in the supposed implication arising from the creation of a particular trust for the benefit of the testator's daughter Catharine. She was incompetent to manage her property, even the annual income. Hence the executor was made a trustee, not only to take and receive her share and dividend, but to apply the same to her maintenance at his own discretion. This is a very special trust, embracing not only the principal but the annual income. While the other children are entitled to have the interest and rents paid to them annually, Catharine is not. Her annual income is to be retained and applied to her maintenance at the discretion of her trustee. This is a very different trust from that made for the children and grandchildren generally, and hence it affords no implication that another trust of a different nature was not intended.

Something was said in the argument of the word "principal," employed by the testator as descriptive of the subject given in remainder to the grandchildren, and it was inferred from it that the thing thus given in remainder is exclusively personalty. More commonly the word principal is used to denote a sum of money placed at interest, or employed as a fund, as distinguished from its income or profits. But the question here is, What did the testator mean by it? We have noticed the fact that he did not use language technically. The word itself has no strict legal meaning. The loose general idea involved in it is a source of income. And the connection in which it was used here evidences that such was the signification in the mind of the testator. He had been making provision for the payment of the income of personalty, proceeds of sale of realty and rents of lands unsold, during the lives of his children. It was a single provision. He treated them all as one fund, and when immediately after, he came to direct what should be done after the death of the children, he made but a single disposition, the subject of which was the principal out

[Sheets' Estate.]

of which the annual income was to come.  If that subject was not realty as well as personality, the rents and profits (that is, the lands) were given for life, and no further provision made in regard to them.  Of the direction that the principal should " be paid" over, it may be remarked that it is obviously nothing more than an order of distribution, and that the word " paid" is not descriptive of the subject-matter.  It is a word often very loosely used, and always liberally construed : Hinnershitz's Appeal, 4 Harris 435 ; see also 2 Sandf. Cha. 432, 437.

We hold then that by the will properly construed the children named by the testator are made beneficial owners of a life estate only in the income of the personalty and realty, and that a remainder in fee is given to the children of the children.

This brings us to consider the effect of the ultimate limitation over in default of issue of the testator's children.  In the court below it was construed as a remainder to issue generally, and hence uniting with the estate for life, and constituting an estate tail in each child, which by the Act of April 27th 1855 became a fee simple in the land, and of course an absolute interest in the personalty.  Such a construction cannot be sustained.  It overlooks the intermediate estate given to the grandchildren.

Passing by the question whether the estates limited for life and those in remainder are of the same nature, both legal or both equitable, which it might be difficult to answer affirmatively, it may be said that the utmost that can be made out of a limitation over of personal estate in default of issue of the legatee for life, or if he should die without issue, or leaving no issue, is an implication of a bequest to the issue.  The apparent intent is that the ultimate legatee is not to take while there are issue of the legatee for life, and hence a gift to such issue is implied.  But a bequest of personalty to one for life, with a remainder to his issue, does not confer an absolute interest upon the first taker—a remainder given to heirs may ; a remainder to issue does not.  This was settled in this state in Myers' Appeal, 13 Wright 111, following Knight v. Ellis, 2 Brown's Ch. C. 570, and In re Wynch's Trusts, 5 De Gex McN. & G. 188.  In gifts of personalty a different meaning is attached to the word issue from that which it bears when used in devises of realty.  The remainder-men take as purchasers, and hence such a remainder does not enlarge the particular estate.

Moreover, both in regard to realty and personalty, it is an unbending rule that when a fee simple or an absolute interest is given in remainder after an estate for life to the children of the first taker, words following containing a limitation over on default of his issue are held not to raise an estate tail by implication.  In this class of cases issue is construed to mean such issue ; that is, children.  The ultimate devise thus becomes the gift of a fee

[Sheets' Estate.]

after a fee. Upon this subject the authorities are full to over-flowing. Some of them were cited in Powell v. Board of Domestic Missions, 13 Wright 56, 57, 58, where the subject was also considerably discussed. Reference may also be made to Curtis v. Longstreth, 8 Wright 297, Hayes on Dispositions of Real Estate 40, 41, et seq., and Smith on Executory Interests, chap. 17, § 1. By this will a remainder of the entire interest was given to grandchildren. A fee in them is inconsistent with the existence of anything more than a life estate in the children, and the last disposition can therefore take effect only as an executory devise or an alternative limitation, not as a remainder.

It follows that the decrees of the Orphans' Court were erroneous.

### SHEETS' APPEAL.

The decree of the Orphans' Court confirming the report of the auditor of the account of the executor is reversed, and the record is remitted with instructions to settle the account according to the construction of the will adopted in the foregoing opinion.

### SHEETS' APPEAL FROM THE DEVISE IN PARTITION.

The decree of the Orphans' Court is reversed, the confirmation of the inquisition, and the inquisition itself are set aside, and the petition for a partition is dismissed.