## HALL v. UNITED STATES.

No. 19746.

District Court, N. D. California, S. D.

April 20, 1935.

740

Earl & Hall, Chaffee E. Hall, and William L. Oliver, all of San Francisco, Cal., for plaintiff.

H. H. McPike, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal.

ST. SURE, District Judge.

Plaintiff seeks refund of admission taxes which he claims were illegally collected by the government. The complaint alleges that on May 5, 1930, plaintiff paid to the Associated Students of the University of California, a nonprofit voluntary association, the sum of $100, in consideration whereof the Associated Students agreed to issue to plaintiff upon application, during the ten-year period from June 1, 1931, to May 31, 1941, tickets for certain athletic contests to the total value of $100 at the rate of $10 worth of tickets per year. There was issued to plaintiff a booklet, setting forth the obligations assumed by the Associated Students and the rights of plaintiff, and containing 200 "scrip coupons." Each owner of a book, containing twenty 50-cent coupons redeemable each year, had the option to purchase two tickets for football games, paying therefor in cash or scrip. In August, 1932, plaintiff applied for two tickets to a football game to be played in November of that year; the established price being $5 each, surrendering twenty of his coupons in exchange. As a condition of receiving the two tickets, plaintiff was required to and did pay $1 admission tax as provided by section 500 (a) (1) of the Revenue Act of 1926, as amended, etc. (section 871 note, title 26 USCA), the pertinent part of which reads: "A tax of 1 cent for each 10 cents or fraction thereof of the amount paid for admission to any place, including admission by season ticket or subscription, to be paid by the person paying for such admission; except that in case the amount paid for admission is less than 41 cents, no tax shall be imposed. * * *"

The issue is presented upon general demurrer.

■ As appears from the complaint, two transactions are involved. The first, when plaintiff paid $100 to the Associated Students and received the booklet with the 200 scrip coupons; the second, when plaintiff exchanged twenty of the coupons for two football tickets.

The question naturally arises, What did plaintiff get for the $100 which he paid? He got the booklet containing the 200 "scrip coupons" with which, or with cash, he could purchase tickets of admission, subject to the conditions set forth in the booklet. The language of the conditions and the allegations of the complaint show that the first transaction dealt with certain rights granted to plaintiff under the agreement, and not with the purchase of, or paying for, the tickets of admission themselves. Unquestionably the purchasing of, and the paying for, the tickets of admission took place at the time of the second transaction. Of particular significance and repeatedly mentioned in the transactions are the words "scrip," "scrip coupons," and "tickets." Webster's New International Dictionary defines "scrip" as "any of various documents used as evidence that the holder or bearer is entitled to receive something either absolutely or conditionally"; "a certificate of indebtedness in the form of a promise to pay, or a certification that a person is entitled to receive a sum of money or goods issued by a business concern." "Scrip" is a receipt, which would be good in lieu of cash. Sharp v. State, 7 Ga. App. 749, 67 S. E. 1124. Webster's, etc., Dictionary says that "coupon" is "a section of a ticket showing the holder to be entitled to some specific accommodation or service," and that "ticket" is a "certificate." In the first transaction, when plaintiff paid $100, he received a booklet giving him certain rights, or entitling him to certain privileges, pertaining to certain tickets of admission to certain athletic contests, informing him of the conditions under which said tickets could be issued to him, and providing him with certain "scrip coupons" which he could use to purchase those tickets, if he did not desire to use cash therefor.

"Paid" is "a word often very loosely used, and always liberally construed." In re Sheets' Estate, 52 Pa. 257, 268. Prima facie the word "paid" indicates that the

obligation has been satisfied and the demand extinguished. There is no substantial distinction between the word "paid" and "satisfied." Ex parte Krouse, 148 Cal. 232, 233, 82 P. 1043. It follows, therefore, that, when plaintiff "paid" $100, he "satisfied" his obligation to the Associated Students to the extent of becoming entitled to the "scrip" or "scrip coupons" with which, under the conditions, he could, if he did not choose to use additional cash therefor, "pay" or "satisfy" his obligation, for the tickets of admission. Since, in 1932, he did "pay" or make "satisfaction" for the tickets of admission with a portion of his "scrip coupons," and, since it is conceded by plaintiff in his brief that "this tax applies to the payment for admission, not to the admission itself, and as soon as the payment for admission is made the tax attaches, whether or not the admission itself ever takes place," it would appear that the tax was legally collected.

The United States Treasury Department, Bureau of Internal Revenue, has adopted Regulations 43, relating to the taxes on admissions, etc., authorized by the Revenue Act, from which the following quotations are made, as showing an administrative construction of the act:

"Art. 1. The tax attaches to the amount paid for each admission separately, and, therefore, if two or more admissions are paid for at once, the total tax is determined by computing separately the tax on each admission and by then adding together the taxes so computed. In other words, the tax for 10 single admissions will always be ten times the tax for each single admission. If, however, a fixed charge must be paid in order to gain admission to a place, the total charge is subject to tax if 41 cents or more, even though it covers admission for more than one person, such as a couple.

"In the case of season tickets or subscriptions, the tax is on the amount paid for each season ticket or subscription, unless the amount which would be charged to the holder or subscriber for a single admission is less than 41 cents, in which case the amount paid for admission by season ticket or subscription is exempt from tax." Page 2 of Reg. 43.

"If tickets or cards of admission are issued the tax should be collected at the time of the issuance of such tickets or cards, while if no tickets or cards are used, the tax should be collected when the person is admitted." Page 3 of Reg. 43.

"Art. 2. Meaning of the term 'place' —The tax under these provisions of the Act is on 'the amount paid for admission to any place.' 'Place' is a word of very broad meaning, and it is not defined or otherwise limited by the Act. But the basic idea it conveys is that of a definite location. The phrase, therefore, 'to any place' does not narrow the meaning of the word 'admission,' except to the extent that it implies that the admission is to a definite location." Page 3 of Reg. 43.

"Art. 3. Meaning of 'admission.'—The tax is imposed on 'the amount paid for admission to any place,' and applies to the amount which must be paid in order to gain admission to a place, if such amount is 41 cents or more. (See art. 1.) The term 'admission' means the right or privilege to enter into a place.' * * *" Page 4 of Reg. 43.

While it is true that "in the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out," and that "in case of doubt they are construed most strongly against the government, and in favor of the citizen" (Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53, 62 L. Ed. 211), it likewise is the rule that "courts have adhered to such construction of the revenue laws as will most effectually accomplish the intention of Congress in passing them." The Newton Bay (C. C. A.) 36 F.(2d) 729, 732. See, also, C. I. T. Corporation v. United States (C. C. A.) 44 F.(2d) 950, 951.

Demurrer sustained.