# Pennsylvania Company for Insurances on Lives, &c., Trustees, Appellants, *versus* Stokes *et al.*, Appellees.

1. In order to raise a case of election there must appear in the instrument itself a clear intention on the part of the author of it to dispose of that which is not his own.

2. When his intention is clearly expressed or necessarily implied, a party may be compelled to make his election or make compensation out of what is given to him.

3. A party entitled to an estate, may by accepting a devise under a will which attempts to dispose of the devisee's property, be barred of a clear right. Per Brewster, J.

4. A party will not be put to an election on a doubtful construction; it must be clear on the face of the will. *Id.*

February 18th 1869. Before THOMPSON, C. J., READ, WILLIAMS and SHARSWOOD, JJ. AGNEW, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Philadelphia county:* In Equity: No. 139, to January Term 1869.

[Stokes's Estate.]

The appeal was by the Pennsylvania Company for Insurance on Lives, &c.

James Stokes, by deed of trust dated the 9th day of August 1823, duly recorded at Philadelphia, conveyed to Caleb P. Wayne and Charles Biddle certain premises situate on the south side of Market street, Philadelphia (Nos. 102 and 104), in trust to permit his sons, Charles M. and Wyndham H. Stokes, to collect the rents, each of a moiety of the same during their respective life-times; and "from and immediately after the decease of the said Charles M. Stokes, then they, the said Caleb P. Wayne and Charles Biddle, and the survivor of them, and the heirs of such survivor, shall stand and be seised of one full, equal and undivided moiety or half part of and in all and singular the premises aforesaid, with the appertenances, in trust to and for the only proper use and behoof of all and every the children of the said Charles M. Stokes, if he shall marry and have any, which shall be living at his death, and the child or children of any such child or children as shall have been married and have died, leaving lawful issue, and their heirs and assigns for ever, part and share alike as tenants in common."

A like limitation over, upon the decease of Wyndham H. Stokes, as to his moiety, was made. A power of subsequent revocation, reserved to James Stokes by the deed, was never exercised.

Charles M. Stokes died in March 1850, seised and possessed of certain real and personal estate, including certain premises devised to him by his father, immediately east of those conveyed in trust, being at the south-west corner of Front and Market streets, considerably exceeding in value after payment of all debts and expenses that of the moiety of the above-described premises. By his will, proved the 1st of April 1850, he appointed Wyndham H. Stokes and Edward Clark Wayne his executors and trustees, and empowered them to sell all his real estate. This they did. By this will he, amongst other things, provided as follows:—

"I give and devise unto my brother Wyndham H. Stokes, and my nephew Edward Clark Wayne, and to their heirs and assigns for ever, all the rest and residue whatsoever of my estate, real and personal, in trust nevertheless to make leases, to receive the rents, &c., and to pay, apply and dispose of the said net rents for the maintenance and education of my seven children hereinafter named, share and share alike, taking into consideration in such division the amount which some of my children are entitled to receive from certain real estate in High street, conveyed by deed of James Stokes to Caleb P. Wayne and Charles Biddle in trust, so that, including the sum derived therefrom, the shares of each of my said children shall be equal."

"I will and direct that so soon as my youngest surviving child

[Stokes's Estate.]

shall reach the age of twenty-one years, or at any sooner time at their discretion, that the said trustees shall sell and dispose of all my real and personal estate (including the property at the southwest corner of Market and Front streets—this done in execution of the power contained in my father's will), at public or private sale, and make, execute and deliver sufficient deed or deeds to the purchaser or purchasers thereof, and, without liability on their part, to see to the application of the purchase-money; and I will and direct that the proceeds thereof, together with the proceeds arising from the sale of the property described in the said deed of trust, shall be by the said trustees divided into seven parts or shares, so that the shares of Elizabeth and Mary shall each be in amount equal to the share of either of my other children, inclusive of the sum received by them under the deed of trust, one share thereof to be invested and held by the said trustees for the use and benefit of each of my said children above named, so that the net income of one share thereof shall be paid by the said trustees to each of my said children for and during the term of their respective lives, and for the sole and separate use of my daughters, so that neither the principal nor the income thereof shall be in anywise liable to anticipation, nor for any debts contracted by any of my said children, or the husbands of any of my said daughters; and from and immediately after the decease of any of my said children, leaving a child or children him or her surviving, I give and devise absolutely and in fee to the said child or children so surviving, share and share alike; if more than one, the share or sum to which his or her parent was entitled; but if any of my said children should die without leaving children surviving him or her, I give and devise the share of such child or children in trust to the trustees above named, to be equally divided among my surviving children, upon the same trusts as are hereinbefore provided."

Charles M. Stokes left seven children surviving him, all named in his will, viz., Mary and Elizabeth, born before marriage, and Sallie M., James, Wyndham H., Charles M., and Maria S., born thereafter. All are upwards of twenty-one years of age. In June 1867, they agreed in confirming the accounts of his executors and trustees, exhibiting the payments from time to time made to and for them subsequently to his decease, by virtue of his will, though they refused to recognise any right in the latter, as such trustees, to collect the rent of the premises in question. They also, with full knowledge of their rights, and of all the provisions of his will, and of the said deed of trust by James Stokes, and of all the other circumstances of the case, accepted the provisions in their favor made by their said father's will, so far as the same were applicable to the property really owned by him.

At their own request the said Wyndham H. Stokes and Edward

C. Wayne were on the 29th day of June 1867, by the Orphans' Court of Philadelphia discharged from their duties as trustees under the said will, and the appellants were appointed in their place, and received the sum of $22,000, ascertained to be in the hands of the former trustees by report of auditor thereon, confirmed by said court on the 21st day of June 1867.

Before the bringing of this suit, the corporation appellants brought a suit in equity in the Common Pleas of Philadelphia against the seven children of Charles M. Stokes, including the·five named as appellants, praying that the latter should account for all rents collected, and that an injunction might issue to restrain them from collecting rents, selling the property, &c.

The present bill was filed by Wyndham H. Stokes and his children, to compel a partition of the premises conveyed by the deed of trust of James Stokes. The appellants contended that the will of Charles M. Stokes put five of his residuary legatees, the children entitled under the deed of trust, to an election to surrender their interest under said deed, or the bequests of their father's will, and that by their acceptance of the last they were estopped from claiming the first. The court below was of opinion that the case was not one of election, and so decreed.

The following opinion was delivered in the first suit :—

BREWSTER, J.—This case has been argued on bill and answer. The only question presented by these pleadings is, whether five of the defendants have lost their title to a valuable property by electing to accept under their father's will.

The property in question belonged to the grandfather of these defendants. By his deed of trust, the estate passed to a son for life, and the remainder went to five of the seven defendants, who are the grandchildren of the original grantor. The tenant for life having no power of appointment, still undertook, as it is said, to dispose of the fee, and to direct that the proceeds thereof, with the proceeds of other property, over which he had the power of disposition, should be united in a trust to which the plaintiffs have succeeded. This joint fund was to be so divided that each of the seven children was to have an equal portion. The decision of this case cannot, therefore, add to or diminish from any share. Giving the whole of the grandfather's estate to the five entitled to it under his deed, would simply entitle the remaining children to a larger share of the paternal property, for, divide the two funds as we may, the shares must, according to the will, be equal.

We are, however, compelled to decide the question presented, although we may not perceive the utility of its presentation. The bill charges that the five children referred to, " with full knowledge of their rights, of all the provisions of the will and of the deed of trust, and of all the other circumstances of the case,

accepted the provisions in their favor, made by their father's said will, so far as the same were applicable to the property really owned by him."

This broad averment is not in terms denied in the answer, and the point as already stated is, whether this election has thrown into the lap of the trust the property over which the testator had no control for that or for any purpose.

It is beyond all doubt that a party entitled to an estate may, by accepting a devise under a will which attempts to dispose of property belonging to the devisee, be barred of a clear right. Such a case is the very illustration given in the books:

"When a testator gives to A. certain property, real or personal, and in the same will gives a third party certain property belonging to A., in this case A. must elect between the two, if he accepts the legacy or devise to himself, he must confirm and carry out the gift of his own property to the third party:" 1 Leading Cas. in Eq. 402.

The reason of this, if reason were needed, is aptly stated by Gaston, J., in Melchor *v.* Burger, 1 Devereux & Battle's Eq. 634.

He says, the intention of the testator " is apparent that both dispositions shall take effect, and the conscience of the donee is affected by the condition thus *implied*, that he shall not defraud the design of the donor, by accepting the benefit and disclaiming the burthen giving effect to the dispositions in favor, and defeating that to his prejudice. The donee is therefore put to his election 'either to take the thing given, and confirm the will, or, retaining what is his, independently of the will, to surrender to the disappointed devisees or legatees so much of what the testator has given him as will compensate them for the disappointment.' "

This has always been the principle acted upon since Noys *v.* Mordaunt, 2 Vern. 581.

But it is also clear that "the construction upon which the party is put to an election, must be clear upon the face of the will. A party will never be put to an election upon a doubtful construction." See the cases cited in the full and learned Notes to Noys *v.* Mordaunt, 1 Lead. Cas. in Eq. 401 (223).

A careful consideration of the will before us has failed to satisfy us that this is the "clear" case for an election required by the authorities. The testator devises to trustees all the rest of his estate to receive the rents and dispose of the net income for the maintenance of his seven children, share and share alike, "taking into consideration in such division the amount which some of his children are entitled to receive from certain real estate," referring to their property. Thus far it will be seen that there is no attempt to devise away their estate. He, on the contrary, speaks of *his* estate, disposes of it alone, and expressly recognises the claim of his children to the other property.

[Stokes's Estate.]

Then follows the power to sell all *his* estate and the direction that the proceeds thereof, "together with the proceeds arising from the sale of the property described in the said deed of trust, shall be by the said trustees divided into 'seven parts.'"

Upon this last clause it might perhaps well be argued that trustees cannot divide what they do not possess; and that they can never hold the proceeds of the last-mentioned property unless they have the power to sell it. It is hard to answer such a proposition, but the will itself gives no power of sale over this property,—does not undertake to devise it, and refers to it only to call it the estate of others. A transposition of a few words without a single alteration, would leave the whole perfectly intelligible. If the testator had said that the proceeds of *his* property "shall be by the said trustees divided into seven parts, so that, with the proceeds arising from the sale of the property described in the said deed of trust, the shares shall be equal," every word would have been retained, and all parts of the instrument would have been consistent with each other. We do not deem it necessary to elaborate this view further, sufficient has been said to demonstrate that the supposed intention of this testator to put these parties to an election has not been, in the language of Mr. Justice Kennedy in City *v.* Davis, 1 Whart. 502, "either clearly expressed or necessarily implied."

"And no man ought under pretence of this rule to be spelt or conjectured out of his property:" Blake *v.* Bunbury, 1 Ves. Jr. 524.

Whilst holding to these views favoring the defendants, we are still of opinion that the complainants in their responsible position of trustees, have a right to hear from these five devisees what their determination is. Are they willing that the whole property shall be administered under the trust, or do they prefer to take to themselves their own estate and to allow the other children to be compensated out of the remainder?

They must come to some formal decision of this question, and announce it in such shape that the trustees shall be freed from all future embarrassments in the division of the income. The complainants have leave to submit such a decree.

This agreement of the five devisees was filed January 15th 1868. "The undersigned, Sallie M. Stokes, James Stokes, Wyndham H. Stokes, Charles M. Stokes, and Maria Stokes, the defendants named in the bill filed in this case, in whom the title to the premises on Market street near Front street, more particularly described in said bill, was limited, and became vested upon the death of Charles M. Stokes, according to the provisions of a certain deed of trust therein mentioned, come into court, and hereby agree and consent that they may be enjoined from claiming from the

[Stokes's Estate.]

trust estate in the hands of complainants, under the will of said Charles M. Stokes, any greater share of the interest, income and principal thereof, than shall suffice, after taking into view all the estates derived under said deed and will, and the rents, profits and income thereof, and the application of the rents or proceeds of the real estate derived under said will, to make ourselves and our respective children equal to the said defendants, Elizabeth S. Green and Mary Stokes and their children.

" And we further agree, that if we shall obtain more than an equal share or shares from the property derived under the said deed of trust, we will respectively abate proportionably in our receipts of income and principal from the estate held in trust under said will.

" And we further agree to render half-yearly an account under oath to the said complainants, of the rents received and disbursements made on account of said Market street property, and to produce the receipts of the said Elizabeth S. Green and Mary Stokes, to show that they have received their equal shares of the said rents, before we shall receive our equal shares of the income of said trust property.

" And we also consent that we may be enjoined from making any sale of the said Market street property held under the said deed, without notice to the complainants, and the approval of this court, hereby electing to take to ourselves our own estate in the said premises conferred upon us by our grandfather, James Stokes, in his deed of trust in the bill recited ; and that our said eldest two sisters be respectively made in all respects equal unto us respectively, out of the property held in trust for us, and that the said court shall make any future decree in this case, to carry into effect this agreement, whenever sale shall be made of the Market street property, or other occasion."

The Court of Common Pleas, on the 18th of January 1868, made the following decree :—

" This case having been heard on bill and answer, and agreement filed of the said defendants Sallie M., James, Wyndham H., Charles M. and Maria S. Stokes, it is ordered and decreed the said last named five defendants are enjoined from claiming from the trust estate in the hands of said complainants under the will of Charles M. Stokes, any greater share of the interest, income and principal thereof, than shall suffice, after taking into view all the estates derived under said deed in the bill mentioned, and said will, and the rents, profits and income thereof, and the application of the rents or proceeds of said real estate derived under said will, to make the said Sallie M., James, Wyndham H., Charles M. and Maria S. Stokes, and their respective children, equal to the said Mary and Elizabeth and their children, so that if the

[Stokes's Estate.]

former shall obtain more than an equal share or shares from the property derived under the said deed, they shall respectively abate proportionably in their receipt of income and principal from the estate held in trust under said will; and they shall produce half-yearly the receipts of the said Mary and Elizabeth to the said complainants, to show that they have received their equal shares of the rents of said Market street property, and account for said rents to complainants before receiving an equal share of the income of said trust property, and that the said defendants be enjoined from making any sale of the said Market street property held under said deed, without notice to the complainants, and the approval of this court.

"And upon such sale being made as aforesaid, the amount shall be reported to this court for the further action and decree of this court, as to the further apportionment and administration of said trust fund by the said complainants. And at any time hereafter any party to this suit and especially upon the death of either of the defendants, the complainants shall have leave to apply to the court for such further order and decree as to the court may seem proper in the premises."

The final decree was as follows:—

"And now, October. 10th 1868, this cause coming on to be heard on bill and answers, and it appearing that the complainants are entitled to have a partition of the premises in Market street, Nos. 102 and 104, referred to and described in their bill of complaint, and it appearing that the said premises are capable of being divided without injury to the whole or to either property, into two parts nearly equal in size and value, and that complainants having conceded to the defendants, Sallie M. James, Wyndham H., Jr., Charles M. and Maria S. Stokes, their choice of the two messuages and lots; and, that the said defendants have chosen the westernmost of said premises (No. 104 Market street), it is, therefore, decreed that a partition be accordingly made of said two properties between the complainants and the said defendants as prayed for in the said bill of complaint, and for making such partition, it is further decreed that the said defendants Sallie M. James, Wyndham H., Jr., Charles M. and Maria S. Stokes shall execute a conveyance of the premises No. 102 Market street, and deliver the same to the complainants so that the same shall be held and enjoyed by the complainants Charles H., Jonathan O. and Sallie M. Stokes, to them and their heirs for ever as tenants in common separated from the said defendants, but subject to the life estate of the other complainant, Wyndham H. Stokes, according to the respective interests of each of said complainants under the provisions of the deed and trust dated 9th day of August 1823, referred to in complainants' bill. And it is further decreed

that the said Wyndham H. Stokes, Charles H. Stokes, Jonathan O. Stokes and Sallie M. Stokes, complainants aforesaid, shall execute a conveyance of the premises No. 104 Market street, and deliver the same unto the defendants Sallie M. James, Wyndham H., Jr., Charles M. and Maria S. Stokes, so that they shall hold and enjoy the same to them and their heirs for ever as tenants in common separated from the said complainants, but subject nevertheless as respects said defendants, and the said premises, No. 104 Market street, to the decree of this court, made the 18th day of January last past, in a certain cause then pending on the equity side of this court of September Term 1867, No. 21, wherein the Pennsylvania Company for insurance on Lives and Granting Annuites, Trustees, &c., were complainants, and Sallie M. Stokes and others were defendants."

The appellants filed the following assignments of error:—

The court erred, 1. In decreeing a partition of the properties described in the bill, between complainants and Sallie M., James, Wyndham H., Jr., Charles M., and Maria S. Stokes, defendants, instead of between complainants and appellants.

2. In decreeing that Wyndham H., Charles H., Jonathan O., and Sallie M. Stokes, complainants, should deliver a conveyance of the premises, No. 104 Market street, to Sallie M., James, Wyndham H., Jr., Charles M., and Maria S. Stokes, to hold and enjoy the same to them and their heirs for ever as tenants in common.

3. In refusing to decree that Wyndham H., Charles H., Jonathan O., and Sallie M. Stokes, complainants, should deliver a conveyance of the premises, No. 104 Market street, to appellants.

*W. F. Judson* and *John G. Johnson*, for appellants, cited City *v.* Davis, 1 Whart. 490; Beal *v.* Stehley, 9 Harris 376; Brownfield *v.* Mackey, 3 Casey 320; Whistler *v.* Webster, 2 Ves. Jr. 367, and Preston *v.* Jones, 9 Barr 460.

*Edwin T. Chase* and *Eli K. Price*, for appellees, cited Guthrie's Appeal, 1 Wright 9; Barnett's Appeal, 10 Id. 392; Horwitz *v.* Norris, 13 Id. 213; Hill on Trusts 253, 278; White's Eq. Cases 273; City *v.* Davis, 1 Whart. 490, and opinion of Brewster, J., antè, p. 139.

The opinion of the court was delivered, March 8th 1869, by

SHARSWOOD, J.—In order to raise a case of election there must appear in the will or instrument itself a clear intention on the part of the author of it to dispose of that which is not his own: 1 White & Tudor's Leading Cases in Equity 235, American note and cases there cited.   When the intention necessary to raise the ques-

tion of election is clearly expressed or necessarily implied, the party to whom a benefit is given by the instrument, but claiming a right adverse thereto, may either be compelled to make his election or otherwise to make compensation out of what is thereby given to him. But unless the intention be so expressed or implied, he cannot be put to his election or called on to make compensation: City of Philadelphia *v.* Davis, 1 Whart. 502. In the will of Charles M. Stokes there is certainly no clear intention to devise the moiety of the property in which, under the deed of trust of James Stokes, he held an estate for life with remainder to his lawful children in fee, but on the contrary a very clear intention not to do so. He provides indeed that compensation shall be made to his other children for the inequality produced by that gift, and describes particularly the mode in which it is to be done. He devises all the residue of his estate, real and personal, to trustees to receive and apply the income for the maintenance and education of his seven children, taking into consideration the amount which some of them would be entitled to receive under the deed, so that including the sum derived therefrom the share of each of his said children should be equal; then, after directing the sale of his real estate he declares, "I will and direct that the proceeds thereof, together with the proceeds arising from the sale of the property described in the said deed of trust, shall be by the said trustees divided into seven parts or shares, so that the shares of Elizabeth and Mary shall each be equal in amount to the shares of either of my other children, inclusive of the sum received by them under the deed." It is true that this clause appears to contemplate a sale of the trust property, and there is no power in that deed for a sale; but neither are the trustees named in the will empowered to sell it, nor can such a power be implied in the teeth of the express recognition by the testator that he had no right to dispose of it. The main object, that of equal division among all his children, can be accomplished without implying such a power. Whenever that property is sold, he directs that such a division shall be made of the proceeds of his own estate as, including the proceeds of that, shall make the shares of Elizabeth and Mary in amount equal to the shares of either of his other children. The decree below effectuates this object, and that in the very mode pointed out by the testator himself. In decreeing partition between the children of Wyndham H. Stokes, subject to his life estate, and the five children of Charles M. Stokes, entitled under the deed of trust, the conveyance to the latter is directed to be expressly subject to the decree made by the court in the cause of September Term 1867, No. 21, by which decree it is provided not only that the five children should take no greater share each from the trust estate of the will, than would make their share, including that of the trust estate of the deed, equal to that of the other children,

11 P. F. SMITH—10

but the five children are expressly enjoined from making any sale of the deed property without notice to the others, and the approval of the court; and the amount of each sale is to be reported to the court for their further order and decree, as to the distribution thereof. It is not easy to perceive how the right and equities of all parties could have been more completely secured. Costs to be paid out of trust estate.

Decree affirmed.