## Sharp *v.* Wightman, Appellant.

*Wills—Legacy to debtor—Construction.*

A legacy by a testator to his debtor does not operate as a release or extinguishment of his debt, unless it clearly appears that it was the intention of testator that it should so operate.

*Wills—Doubtful intention—Extrinsic evidence.*

When the intention of a testator is doubtful, extrinsic evidence may be resorted to, in order to ascertain it.

Where testatrix leaves the residue of her estate to a trustee in trust to pay the net income to a son "free from his present or future debts, contracts or engagements," and it appears that the testatrix at her death held notes of the son, extrinsic evidence may be introduced to show that it was the intention of testatrix that the notes should not be paid, if the son survived her.

Argued Jan. 6, 1903. Appeal, No. 127, Jan. T., 1902, by John E. Wightman, from order of C. P. No. 1, Phila. Co., Dec. Term, 1901, No. 4098, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Isaac S. Sharp, Executor of Jane A. Wightman, Deceased, v. John E. Wightman. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Assumpsit on promissory notes.

Rule for judgment for want of a sufficient affidavit of defense.

The averments of the affidavit of defense are set forth in the opinion of the Supreme Court.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*E. Hunn Hanson*, with him *John W. Patton*, for appellant.— The general rule is that a legacy by a testator to his debtor does not operate as a release or extinguishment of the debt unless it clearly appears to have been the intention of the testator that it should so operate. The intention referred to may be gathered from the will itself, and in the absence of any clearly expressed or implied intention in the will evidence thereof dehors the instrument may be resorted to.

It is believed that in the case presented the intention is expressed in the will. But if there is doubt in this behalf certainly there can be none that from such expression the implied intention to that end is manifest: Baily's Est., 153 Pa. 402; Zeigler v. Eckert, 6 Pa. 13.

*Albert L. Moise*, of *Sharp, Alleman & Moise*, for appellee.— In the absence of any allegation of fraud, misrepresentation or mistake, a parol collateral agreement contradicting or varying the terms of a bill or note upon which action has been brought is inadmissible in evidence, and an affidavit of defense setting up such a parol agreement as a defense to the action is insufficient to prevent judgment: Canfield v. Ditman, 2 Mona. 42 (16 Atl. Repr. 739); Clarke v. Allen, 132 Pa. 40; Irvin v. Irvin, 142 Pa. 271; Ziegler v. McFarland, 147 Pa. 607; Superior Nat. Bank v. Stadelman, 153 Pa. 634; Lee v. Longbottom, 173 Pa. 408; Griffee v. Griffee, 173 Pa. 434; Wolf v. Rosenbach, 2 Pa. Superior Ct. 587; Dodge v. Chessman, 10 Pa. Superior Ct. 604; Plunkett v. Roehm, 12 Pa. Superior Ct. 83; Hill v. Gaw, 4 Pa. 493; Coil v. Pittsburg Female College, 40 Pa. 439; Anspach v. Bast, 52 Pa. 356; Conghenour v. Suhre, 71 Pa. 462; Hacker v. National Oil Refining Co., 73 Pa. 93; Heist v. Hart, 73 Pa. 286; Wharton v. Douglass, 76 Pa. 273; Commercial Nat. Bank v. Henninger, 105 Pa. 496; Phillips v. Meily, 106 Pa. 536; Garsed v. Rutter, 2 Cent. Repr. 800; Butler v. Keller, 19 Pa. Superior Ct. 472.

OPINION BY MR. JUSTICE DEAN, April 20, 1903 :

John G. Wightman, the defendant, is the son of Jane A. Wightman for whom the plaintiff is executor. The mother died on August 24, 1901, possessed of considerable estate. In her lifetime she had frequently given to her son money in amounts of $200 and $300, for which she took his promissory notes which were in her possession uncanceled at her death. On these notes, amounting with interest to over $3,000, the executor brought suit against the son ; the son made affidavit of defense, averring : 1. That one note of over $1,500 was made up of several of the smaller notes, which he had neglected to take up when the larger note was given. 2. That there was between him and his mother at the time the notes were given a parol agreement, that in case the son survived her, they were to be treated as part of his estate and canceled, but in case she survived were to be collected. 3. That a reasonable interpretation of his mother's will, which he makes part of his affidavit, shows such to have been her intent. 4. He further avers an ability to prove the parol agreement by a disinterested witness. On a rule for judgment for want of a sufficient affidavit of defense, the court below made the rule absolute and defendant appeals. The learned judge before whom the rule was argued filed no opinion. To say nothing of the aid which an appellate court has the right to expect from a lower court in reviewing its judgment, surely, the parties to this issue, involving to them more than $3,000, might reasonably hope to have upon the record some reason for the judgment ; but they have here, only the announcement of the clerk that a judgment has been entered ; the consequence of such an unsatisfactory record might well have been anticipated,— an appeal to this court with all the delay and expense incident thereto.

The question is whether the affidavit averred sufficient to prevent judgment. That brings us to an interpretation of the will. After making certain bequests of household goods and personal jewelry, as to the residue of her estate, she directs as follows :

" Fourth. The rest, residue, and remainder of my estate, real, personal and mixed, I give, devise and bequeath to my trustees hereinafter named, their successor or successors, in trust, nevertheless, for the following purposes, to wit :

" To invest and keep the same invested in such manner as they shall deem best, and to pay the net interest, income and profits thereof into the hands of my said son John Gerry Wightman, M. D., from time to time so long as he shall live free from his present or future debts, contracts and engagements. If he should die leaving issue at his death, I direct that my said trustee or trustees, their successor or successors, shall assign, transfer and convey said trust estate to said issue as if my said son had survived his wife and died possessed thereof intestate and a citizen of Pennsylvania."

If we give this language a technical construction to accord with the strict import of the words, it would in effect constitute a gift to her son of the amounts represented by the notes, for the income is to be free from his present debts ; the notes evidence a present indebtedness of the son to the mother.    But a general, and well settled rule here comes in, which avoids the technical construction ; that rule is this : " A legacy by a testator to his debtor does not operate as a release or extinguishment of his debt, unless it clearly appears that it was the intention of testator that it should so operate."    This rule is recognized by the text writers and by our own cases : 2 Story's Equity Jurisprudence, sec. 1123 ; Matlack's Appeal, 153 Pa. 402.    It will be noticed, however, that it does not exactly meet the words of this bequest; the gift is not only of the net income, which of itself would not warrant an inference that the debt was to be canceled, but is at once followed by the words " free from his present or future debts."    It would not be free from his present debts if the one he owed the testatrix was to be paid.    We may say then, that taking the view most favorable to the appellee, the intention of the testatrix was doubtful.    All the authorities agree that if the intention be doubtful we can have resort to evidence as Judge STORY says, aliunde, or as Chief Justice STERRETT says in Matlack's Appeal, supra, evidence dehors the instrument, or more elaborately by GIBSON, C. J., in Zeigler v. Eckert, 6 Pa. 13, " It (the evidence) is not adduced to control the will but to rebut a presumption from matter extrinsic to it."    He then cites from Lord LOUGHBOROUGH's opinion of Aston v. Pye, 5 Ves. 350, " A father who had taken two bonds from his daughter's husband for money lent, said in a letter to the husband's mother that the

debt was forgiven and expressed the same thing to others, whose testimony was corroborated by cash accounts in testator's handwriting. The chancellor decreed not only payment of the legacy, but that the other bond should not be demanded."

We assume then, that the intention of testatrix by the will is at least doubtful, what then is the evidence dehors the will averred in the affidavit? He avers, quoting from the affidavit, " Upon several occasions when her property (the mother's) became the subject of my mother's talk with her confidential friend, Catherine Bard—who for more than ten years prior to my mother's death lived with her as a companion—my mother said she had taken the notes which I had given her so that the money would be repaid if I died first; otherwise she did not wish me to repay them and in that way benefit her nephews and nieces." Taking into consideration the doubtfulness of the intention as expressed in the will, the facts that the son was her only child and the sole legatee of the income of her residuary estate, and that the evidence of Catherine Bard if believed by the jury would make clear an intention not to have the notes collected if he survived her, we think the evidence dehors the will should have been submitted to them.

The judgment of the court below is reversed and it is directed that the trial be proceeded with according to law.