## Elwart's Estate.

*Trusts and trustees—Spendthrift trust—Will—Legacy—Discharge of debt to testator—Intention.*

Where a son gives to his mother in 1894, a promissory note under seal for $775, and the mother in 1897, credits him with $125 on the note and in 1907 makes her will by which she leaves about $2,000 to her son in trust, and directs that neither the principal nor income shall "be liable for the present, past or future debts, defaults, contracts,

engagements or obligations of my said son," the court will not charge against the income of the trust for the son, the amount of the debt and interest of the note held against him by his mother.

Argued Oct. 24, 1912. Appeal, No. 162, Oct. T., 1912, by Sarah A. Maesch, from decree of O. C. Phila. Co., April T., 1911, No. 156, dismissing exceptions to adjudication in Estate of Johanna B. Elwert, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to adjudication.

From the adjudication it appeared that the testatrix died February 17, 1909, leaving a will whereby she gave $100 each to Otto M. Elwert, Jr., Lillie Elwert, George Elwert and Eliza Elwert, and the residue of her estate to her four children, one-fourth each to Bertha E. Weniger, Sarah A. Maisch and Max B. Elwert, and the remaining one-fourth to Max B. Elwert as trustee.

"To pay over from time to time to my said son, Theodore H. Elwert, such part or portion of the net income accruing from the one-fourth part or share as aforesaid as he shall in his wisdom deem advisable. And should at any time my said trustee, Max B. Elwert, deem it expedient and advisable and for the best interest of my said son, Theodore H. Elwert, to pay to him, my said son, Theodore H. Elwert, the whole or any part of the principal of my said estate, so held in trust as aforesaid, it is my will and desire and he, my said Trustee, is hereby authorized to pay the said principal as aforesaid, using his own discretion as to the amount and time when he shall make such payment or payments as aforesaid of the principal, it being my express will and intention that said payment of the principal shall be entirely at the option of my said Trustee, Max B. Elwert, and in no manner or under any circumstances is either the principal or income so held in trust as aforesaid, to be liable for the present, past or future debts, defaults, contracts, engagements, or obligations of my said son, Theodore H. Elwert, during

the continuation of the trust hereby and herein created. In the event of the death of my said son, Theodore H. Elwert, without having received the entire principal and income of said one-fourth part or portion so held in trust as aforesaid, then and in that event, I direct my said trustee, Max B. Elwert, to pay the whole or such part of said one-fourth part or share as may then be remaining and unpaid unto the child or children, if any, of him, my said son, Theodore H. Elwert, absolutely and forever, and in the absence of such child or children, then I give, devise and bequeath the said part or share so held in trust as aforesaid unto my said children, viz.: Bertha E. Weniger, Sarah A. Maisch and Max B. Elwert, in equal third parts or shares, share and share alike, absolutely and forever."

On February 6, 1894, Theodore H. Elwert gave his mother a promissory note under seal for $775. Under date of February 18, 1897, there was a credit indorsed on the note of $125.

The auditing judge, DALLETT, P. J., found as follows:

The question for determination is whether the balance due upon this note, together with interest thereon, is to be charged against the distributive share of Theodore H. Elwert.

The note is dated February 6, 1894, the credit on account is dated February 18, 1897. The testatrix's will was executed on July 17, 1907. She died on February 17, 1909.

The balance of principal for distribution after payment of the testatrix's pecuniary legacies and composed of both personal and real estate is $7,176.20.

The balance due upon this note at the date of testatrix's death, figuring interest from the date on which the payment was made on account was approximately $1,118.

If this were added to the balance of principal shown by the account, $7,176.20, the total would be $8,294.20—one-fourth of which would be $2,073.55. The interest derived from this fund after the payment of the costs

of administration, taking into consideration the fact that
the $1,118 would only earn income after it had been paid,
would amount to less than $100 per annum, of which under
Baily's Est., 153 Pa. 402, and Neel's Est. No. 1, 207 Pa.
443, $39.00 per annum would be applied as interest on
the indebtedness of $650, and perhaps $60.00 a year on
account of the indebtedness of $1,118, so that it would
be many years before Theodore H. Elwert would receive
any benefit under the will, unless the trustee desired to
pay him the principal as to which he has the right to ex-
ercise his discretion.

A legacy by a testator to his debtor does not operate
as a release or extinguishment of his debt unless it clearly
appears that it was the intention of the testator that it
should operate: Sharp v. Wightman, 205 Pa. 285.

This is undoubtedly the rule, and unless an intention
is to be found from this testatrix's will, or after the in-
troduction of extrinsic evidence, the debt must be charged
against the interest of Theodore H. Elwert, and therefore
being a gift over of the principal at the death of Theodore
H. Elwert under the authorities hereinbefore cited charged
against income.

The testatrix's words are that "In no manner nor under
any circumstances is either the principal or income so held
in trust as aforesaid, to be liable for the present, past, or
future debts, defaults, contracts, engagements or obliga-
tions of my said son, Theodore H. Elwert, during the con-
tinuance of the trust hereby and herein created."

On the back of the check where the credit for $125
appears under date of February 18, 1897, there also
appears the memorandum "Same credit as note of T.
Elwert for $1,154, dated 11/9/96 (see note)." There was
another note, and if so, was it paid or destroyed?

And ten years elapsed between the date of this credit
and the date of testatrix's death.

Taking into consideration the testatrix's words, the
probable existence of a later and forgotten indebtedness,
the number of years that elapsed between the date of

credit and the date of testatrix's will and the actual situation which would result, were the debt held to be due, by the son, the auditing judge must conclude that the testatrix when she wrote her will did not have in mind the payment of any indebtedness by her son, Theodore H. Elwert, and that if such indebtedness did exist, she intended when she directed that the share held in trust for that son should be both as to principal and income free from liability for "present, past or future debts" to include the debt owing by him to her. It is reasonable to believe, in view of her reference to debts that had she had any other intention in mind, she would have referred in some way to this particular indebtedness.

On exceptions ANDERSON, J., filed the following opinion:

This is a close case. The ordinary rule as stated in Sharp v. Wightman, 205 Pa. 285, is that a legacy by a testator to his debtor does not operate as a release or extinguishment of the debt, unless it clearly appears that it was the intention of the testator that it should so operate. And in that case, which was a spendthrift trust, it was held that the provision against liability for the legatee's present or future debts, contracts or engagements, had the effect of raising a doubt, which might be resolved by extrinsic evidence as to the intention of the testator in reference thereto.

In Neel's Estate, 207 Pa. 443, where the testator created a trust to pay one-fifth of two-thirds of the income of his estate to his son during the life of testator's widow, and the whole after her death, and after the death of the son the principal out of which the one-fifth income arose to the son's issue, then living, and where the testator after the making of the will paid his son various sums of money amounting in the aggregate to $4,100, and took his notes therefor, it was held that the clause in the will absolving the son's share from his debts or liabilities did not apply to the obligation taken for money paid the same subsequent to the making of the will, but that repayment of

such moneys should be made out of the income of the cestui que trust, and not out of the principal of the fund.

In the present case we have no testimony as to the intention of the testatrix. We are therefore confined to the four corners of the will. But, as said in Hermann's Estate, 220 Pa. 52, "When we come to consider it (the will) and interpret its meaning, we must do so in the light of all the circumstances by which it was surrounded when he made it, and by which he was probably influenced: Stambaugh's Estate, 135 Pa. 585. 'It has been long and well settled, and indeed it is a principle so cognizant to reason that the only wonder is it should ever have been questioned; that all the surrounding circumstances of the testator—his family, the amount and character of his property—may and ought to be taken into consideration in giving a construction to the provisions of his will: Postelthwaite's Appeal, 68 Pa. 477.'"

The present case differs from Neel's Estate in this, that no money was paid after the date of the will; it had been given long prior thereto; and the payment, therefore, cannot be construed as an advance on account of the legacy. It is true that in the English case cited by exceptant, Wilmot v. Woodhouse, 4 Bro. C. C. 227, the debt was long overdue as here, and that the chancellor held that the mere fact that the testator recited that he had already given certain moneys to the legatee as a reason why he did not give her, his daughter-in-law, as much as he gave to his children did not manifest an intention to release the debt; that it could not be presumed that he meant to release it for he kept the note uncanceled in his possession, and that if he forgot it, there was an utter absence of intention with respect to it. With all due deference to the learned chancellor, the writer cannot follow his reasoning; at all events the case is not a binding authority.

Here was a debt created long before the making of the will, a debt of a partnership, of which the cestui que trust was a member, and therefore debt of his copartner as well as himself, and but for the fact that the note was under

seal, would be outlawed by the statute of limitations. It may be and probably was on account of his debts incurred as a partner that the testatrix placed her son's share in trust, as well as on account of debts in his transaction, instead of giving it to him outright as in the case of her other children.

As pointed out by the auditing judge, the balance shown by the account is about $7,000, and there is nothing to show that the circumstances of the testatrix had changed since the making of her will. The note of Theodore H. Elwert, with interest, amounts to over $1,000. If this were added to the balance for distribution, the share to be held in trust for Theodore would be about $2,000, and if we were to apply the rule adopted in Neel's Estate, he would not receive any income from his legacy for many years.

It can hardly be supposed that the testatrix intended her son to remain without income for this length of time when she so emphatically provided that "in no manner or under any circumstance is either the principal or income so held in trust as aforesaid to be liable for the present, past or future debts, contracts, engagements or obligations of my said son, Theodore H. Elwert, during the continuation of the trust hereby and herein created." But for the rule cited in Sharp v. Wightman, there could have been no doubt of the meaning of this will, and it seems to us that sufficient appears in the will and in the circumstances of testatrix to show her intention that the rule cited in Sharp v. Wightman should not apply. The exceptions are dismissed.

*Error assigned* was in dismissing exceptions to adjudication.

*Jacob Weinstein,* with him *George De B. Myers* and *George S. Russell,* for appellant.—This case was ruled by Sharp v. Wightman, 205 Pa. 285; Neel's Estate, 207 Pa. 443.

*Raymond M. Remick,* for appellee, cited: Zeigler v.
Eckert, 6 Pa. 13; Stambaugh's Estate, 135 Pa. 585;
Postlethwaite's App., 68 Pa. 477; Hunter v. Blodget, 2
Yeates, 480.

OPINION BY HEAD, J., February 27, 1913:

The record presented by this appeal discloses no re-
versible error. The opinions filed by the learned auditing
judge and court in banc fairly meet and dispose of every
material question involved. Due recognition is given to
what Chief Justice GIBSON in Zeigler v. Eckert, 6 Pa. 13,
calls "the legal presumption of an intention not to dis-
charge a debt which arises from a naked legacy to the
debtor." It is upon this presumption the appellant must
rely. But it is clearly pointed out in Sharp v. Wightman,
205 Pa. 285, that where a testator makes a gift of the net
income of a fund or property, and especially where it is
provided, as in this case, that "in no manner or any cir-
cumstances is the . . . . income so held in trust to be
liable for the present, past or future debts" of the legatee,
the presumption just referred to, if not entirely destroyed,
is so far weakened that recourse may be had to extrinsic
evidence to enable the court to determine the real intent
of the testator in the premises. The record shows that
an opportunity to furnish such proof was given to the
present appellant but none was offered. The learned
auditing judge therefore, in the absence of other evidence,
rightfully took cognizance of the facts disclosed by the
adjudication. From these it appeared that the estate of
the testatrix was small; that by reason of financial re-
verses or otherwise one of her sons needed the protection
of a spendthrift trust for any bequest she might make in
his favor, and that her will clearly disclosed an intention
on her part to make some provision by way of income to
aid him.

From these facts the conclusion was accordingly de-
duced that in the present case the beneficent intention of
the testatrix would be practically nullified were the legatee

to have charged even against his income the amount, debt and interest, of a note he had given to his mother long before her will was made. It is also pointed out that by reason of the fact just stated the present case is clearly distinguishable from Neel's Estate, 207 Pa. 443. All of these questions, and they are the vital and controlling ones in this case, are clearly and more elaborately discussed in the opinion of the learned court in banc. We are of opinion that the conclusion there reached was correct, and we accordingly affirm the decree that was entered.

Decree affirmed.