[L. A. No. 14193. In Bank.—October 23, 1933.]

H. C. SYMONDS, as Executor, etc., Appellant, v. GRACE C. SHERMAN, as Administratrix, etc., Respondent. (Two Cases.)

Kirkbride, Wilson & Brooks and John D. Willard for Appellant.

U. F. Lewis and Fred A. Wilson for Respondent.

THOMPSON, J.—These consolidated causes were transferred to this court after decision by the District Court of Appeal, Mr. Presiding Justice Barnard of the Fourth District being the author of the opinion, because we were in doubt as to the correctness of the conclusion of that court with respect to two notes, in the sums of $5,000 and $400 respectively. A further consideration has convinced us that the District Court of Appeal correctly determined the matter, and we adopt the major portion of the opinion therein rendered, as follows:

"On January 3, 1929, an action was begun by H. C. Symonds, as executor of the will of Jerusha W. Garrison, against Nettie N. Childs, seeking to recover on a promissory note for $5,000, dated May 15, 1925, with a second cause of action based on a note for $400 dated June 1, 1926. On May 23, 1929, another action was filed upon a note for $2,500, dated August 12, 1924. All of these notes were signed by Mrs. Childs and payable to Mrs. Garrison. Sub-

sequently Mrs. Childs died and her administratrix has been substituted as defendant in both cases. The two actions were consolidated for trial, and one set of findings and one judgment was entered in favor of the defendant, from which judgment the plaintiff has appealed.

"Mrs. Garrison was an invalid, quite elderly, and for many years she and Mrs. Childs had been very close friends. About the time the $2,500 note was executed Mrs. Childs took Mrs. Garrison into her home and, in order to make this possible and to provide comforts and conveniences for her, remodeled her house, making rather extensive alterations for the purpose. From that time until the death of Mrs. Garrison, Mrs. Childs not only furnished her board and lodging at an agreed price which was paid, but rendered to her unusual services which she required as she became more feeble, giving her almost constant care and attention, day and night, during most of that period. The rendering of these additional services is not disputed and the trial court has found that they were of a value very considerably in excess of the monthly amounts paid to Mrs. Childs. On March 27, 1927, Mrs. Garrison died, leaving a will executed on January 21, 1927, which contained the following:

" 'Item 2. In recognition of the kindness shown me by care and attention which I have received from Mrs. Nettie N. Childs, of Redlands, California, I will devise and bequeath unto her, the said Nettie N. Childs the sum of three thousand dollars to be paid to her before any of the bequests hereinafter named have been paid.'

"This is followed by 'Item 3,' making several specific bequests totaling $3,980, and by 'Item 4,' giving the residue of her estate to her nephew H. C. Symonds, who is also appointed executor.

"The controversy here is as to whether or not Mrs. Childs was entitled to a cancellation of the three notes sued on, in addition to the bequest of $3,000 provided in the will.

"We will consider first the $2,500 note involved in the second action filed. In her answer, in addition to a general denial, Mrs. Childs alleged as a separate defense, that in the year 1924 she entered into an agreement with Mrs. Garrison by the terms of which Mrs. Garrison agreed to furnish to her the sum of $2,500, and she agreed to make

such changes and alterations in her dwelling house as Mrs. Garrison desired for her own accommodation and comfort; that the money was furnished and the alterations made; that it was further agreed that she should execute a note for $2,500 and pay interest thereon as long as Mrs. Garrison lived and that at her death the note should be cancelled; and that concurrently with the execution of the said note Mrs. Garrison executed an instrument in writing in which she agreed that the note should be cancelled upon her death. The court found in accordance with the allegations of this separate defense, also finding that Mrs. Childs would not have made the changes and alterations in her home for the accommodation of Mrs. Garrison had not this agreement been made:

"We think these findings are supported by the evidence. After the death of Mrs. Garrison the $2,500 note was found and, pinned to it and folded therewith, was found another document of the same date, entirely in Mrs. Garrison's handwriting, reading as follows:

" 'August 12, 1924.

" 'To whom it may concern:

" 'This note of Nettie N. Childs is to be given back to her at the time of my death as compensation for kindness shown to me.

" 'MRS. J. W. GARRISON.

" 'Redlands, California.

" 'This is my own handwriting.'

"The deposition of Mrs. Childs was admitted in evidence at the suggestion of the appellant, with no objection made thereto, and in fact the appellant relies upon considerable portions thereof in the arguments here made. In this deposition Mrs. Childs testified that before she took Mrs. Garrison into her home it was agreed between them that this amount was to be advanced to her; that she was to take Mrs. Garrison, look after her and see that she was not put in an institution; that the $2,500 was not to be repaid, but that she should pay interest thereon during the lifetime of Mrs. Garrison; and that the obligation was to be cancelled upon her death. She also testified that she spent a large share of the money in remodeling her home for the accommodation of Mrs. Garrison, and that thereafter until her death she took care of her, waiting upon her both day and

night, and giving details of a most exacting and arduous attention required of her by Mrs. Garrison. A letter from Mrs. Childs to Mr. Symonds, the executor appellant, dated May 5, 1924, was received in evidence. In this letter Mrs. Childs explained that she proposed to take Mrs. Garrison and look after her for a named amount per month, with an additional $2,500, that she was to pay interest on this amount during her lifetime so that her income would not be reduced, and that this note was to be cancelled upon the death of Mrs. Garrison, 'whether it be this year or several years hence'; and closing by asking Symonds' approval of the plan. Another letter from Mrs. Childs to Mr. Symonds, received by him in September, 1924, was introduced, in which she told of the reorganization of her household and the taking of Mrs. Garrison into her home, that 'she has loaned me and has my note for $2,500 which I spoke to you about' and said, 'I trust this will meet with your approval, otherwise I will have to give it up.' ▮▮ The appellant now claims that the two letters last referred to were not admissible in evidence. Not only is no sufficient reason pointed out why these letters were not admissible upon the issues raised as to the agreement in connection with this note, but the record shows that at the time these letters were offered and received in evidence, no objection thereto was made, and the letter of May 5, 1924, was read into evidence by the appellant in response to a question asked by his own attorney.

▮▮ "It is a general rule that several papers relating to the same subject-matter and executed as parts of substantially one transaction, are to be construed together as one contract (6 Cal. Jur. 298; 19 Cal. Jur. 832; Civ. Code, sec. 1642; *Goodwin* v. *Nickerson*, 51 Cal. 166). We think this rule applies under the circumstances here shown, and that these findings and judgment, in so far as this particular note is concerned, are supported by the evidence, which shows an agreement, on ample consideration and evidenced by a written memorandum, that the principal sum of the note is not to be paid.

▮▮ "A different situation appears with respect to the first action filed, involving the other two notes. There is neither evidence of any agreement entered into contemporaneously therewith nor of any other agreement for the

cancellation of these notes. After the death of Mrs. Garrison, a memorandum written and signed by her was found, reading as follows:

" 'For value received.

" 'This is to certify that any notes held by me against Nettie N. Childs at my death shall be cancelled.

" 'JERUSHA W. GARRISON.' "

"It does not appear when this was written or under what circumstances, nor does it appear that there was any consideration therefor. As is conceded by the respondent, the problem of whether or not these two notes are to be considered as cancelled resolves itself into the question as to whether or not a testamentary discharge thereof was effected by Mrs. Garrison's last will.

"The respondent contends that a bequest to a debtor, coupled with evidence establishing an intent on the part of the creditor to release the debt, effects a testamentary discharge thereof, citing in support thereof such cases as *Ziegler* v. *Eckert,* 6 Pa. 13 [47 Am. Dec. 428] ; *Sharp* v. *Wightman,* 205 Pa. 285 [45 Atl. 888] ; *Dougherty* v. *Rogers,* 119 Ind. 254 [20 N. E. 779, 3 L. R. A. 847]. It is then contended not only that a latent ambiguity appears in this will justifying the admission of other evidence tending to show such an intent on the part of the testatrix, but that such an intention conclusively appears from the language used in the will. It is argued that an intention to release these notes appears upon the face of the will since the will fails to recognize the existence of the indebtedness, since uniform language is used in referring to Mrs. Childs and other devisees, since $3,000 is to be 'paid' to Mrs. Childs, and finally, since the bequest to Mrs. Childs is given priority over the other specific bequests amounting to $3,980. It is argued that this priority provision was useless if the notes be not considered as cancelled, since the amount of the notes, irrespective of other portions of the estate, is larger than the total amount of all specific bequests. This argument is not conclusive since it could well be that Mrs. Garrison, having made the contract with reference to the $2,500 note, did not consider that a part of her estate and, with that note eliminated, the amount of the remaining notes was not sufficient to cover the $3,000 bequest to Mrs. Childs and the other specific bequests made. In addition, it appears that Mrs. Garri-

son's estate, aside from these notes, consisted of only about $500 at the time the will was drawn. In view of her condition, the amount required to care for her, and the uncertainty as to the length of her life, she could well have anticipated and provided for a situation in which all of her specific bequests could not be paid. The fact that the bequest of $3,000 to Mrs. Childs was prefaced by the statement that it was made 'in recognition' of the kindness and care she had received from Mrs. Childs, indicates that she intended no further or additional testamentary provision for her, in recognition of those attentions.

"In *Sharp* v. *Wightman, supra,* cited by the respondent, it is said: 'A legacy by a testator to his debtor does not operate as a release or extinguishment of his debt, unless it clearly appears that it was the intention of testator that it should so operate.' "

In the last-cited case, however, the language of the will was such as to indicate a general release. The testatrix there devised the residue of her estate to trustees with authority "to invest and keep the same invested in such manner as they shall deem best, and to pay the net interest, income and profits thereof into the hands of my said son John Garry Wightman, M. D., from time to time so long as he shall live free from his present or future debts, contracts and engagements". In *Dougherty* v. *Rogers, supra,* the will contained the following clause: "I will devise and bequeath to Philo Rogers, the young man I raised, in addition to all I have already given him, the further sum of $500." In an action upon notes aggregating $6,000, evidence of the relations of the parties was admitted to show what was meant by the expression "in addition to what I have already given him". In *Ziegler* v. *Eckert, supra,* in speaking of the admissibility of the parol evidence, the court said: "It is not adduced to control the will but to rebut a presumption on a matter extrinsic to it; and its competency to so do is established." While the language of some of the authorities cited by the respondent indicates that in some jurisdictions an intention to discharge a debt may be proven by matters *dehors* the will, yet the above references to the authorities relied upon and those in our own jurisdiction convince us that ordinarily the testator's intention is to be ascertained from the words of the will exclusive of his

other declarations and that evidence of his declarations cannot be received in the absence of uncertainty or ambiguity appearing upon the face of the will. This is so, not only for the purpose of preserving the sanctity of the written declarations, but it is also founded upon the reason that the testator's lips have been sealed. While we would not deny to the readers of an instrument the same light that the writer employed, yet it must be borne in mind that he has endeavored to express his intention in the instrument, and that he who is charged with the interpretation thereof should be careful not to substitute another in its stead.

*Estate of Tompkins,* 132 Cal. 173 [64 Pac. 268], illustrates our meaning and closely approaches the present case. In that case the testatrix had released two of her sons from obligations and declared that they were canceled. Six years later she directed by her will that the amounts of the obligations should be deducted from their interests and the court said: "The instrument of release was executed in 1886 and whatever motive may have then prompted her to give it, she was not thereby precluded from making, in 1892, such testamentary disposition of her property as she desired; and if she deemed it just or proper, for the purpose of bestowing upon each of her children an equal portion of her property, that the amounts received by these sons should be deducted from their shares, she was at liberty to express such purpose in her will, and if so expressed it is the duty of the court to carry it into effect. Whether such was her intention must be determined from the terms of the will itself. The will must be interpreted by the language which she has used therein, and cannot be affected by an instrument made by her several years previous, and to which she makes no reference. The circumstances under which the will is made are to be taken into view only when there is an uncertainty 'arising upon the face of the will', and only for the purpose of ascertaining 'from the words of the will' the intention of the testator. (Civ. Code, sec. 1318.) Even if it could be shown that her execution of the document of 1886 had escaped her memory, it would merely result that the purpose or motive for directing the deduction was produced by a mistake or oversight, and would constitute no reason for disregarding the language of her will." While related to somewhat different subjects,

*Estate of Franck,* 190 Cal. 28 [210 Pac. 417], and *Estate of Donnellan,* 164 Cal. 14 [127 Pac. 166], generally support the rule.

The language of the will in the present case is clear, unequivocal and free from any ambiguity. The bequest was made in appreciation of the kindness and attention shown to the testatrix by Mrs. Childs. No situation has been shown to exist which would permit the introduction of extrinsic evidence to show that a cancellation of the notes was intended.

A number of other points are raised by appellant which need not be considered in view of the conclusion reached upon the point just discussed.

The portion of the judgment denying recovery to appellant on the first action filed, involving the notes for $5,000 and $400 respectively is reversed. That portion of the judgment involving the second action filed, denying recovery of the $2,500 note, is affirmed.

Seawell, J., Preston, J., Langdon, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.