## Gretz Trust

*James H. Stevens,* for accountant.

*Jonah D. Levin* and *Donald O. Hovey,* of *Rambo & Mair,* for Marjorie Gretz Rauch.

*Jerome B. Apfel,* of *Blank, Rome, Klaus & Comisky,* for Karl L. Gretz.

*Calvin S. Drayer, Jr.,* for Mary Gretz.

*Samuel Kravitz,* guardian and trustee ad litem, p.p.

PAWELEC, J., February 6, 1975.—This trust arose under unrecorded deed of trust dated February 17, 1961, and amendments thereto dated March 23, 1961, and November 27, 1961, whereby Charles W.

Gretz, settlor, transferred certain assets to The First Pennsylvania Banking and Trust Company, trustee, in trust, to pay the net income therefrom to settlor for life, plus principal in such amounts as trustee deemed necessary for his adequate maintenance and support or as settlor would by writing request. Upon the death of settlor, the trust res was to be divided into a marital deduction trust and a residuary trust for the benefit of settlor's widow, Helen B. Gretz. We are here concerned with the residuary trust, designated Trust "B" by settlor, wherein Helen B. Gretz was entitled to receive the net income therefrom for life. Upon the death of Helen B. Gretz, the trustee is directed to divide the principal into three trusts, designated "C," "D" and "E."

Trust "C" shall consist of the lesser of (a) such amount of principal as trustees in their sole discretion deem necessary to provide a net income of $2,500 per annum, or (b) an amount equal to one-third of the total value of all trusts held under this will upon the death of the survivor of settlor and his wife. Mary Gretz, wife of settlor's deceased son, William Gretz, 3rd, is to be paid $2,500 from the income of this trust, for life, or until remarriage, with the remainder of income, if any, payable to settlor's issue, per stirpes. After the death of Mary Gretz, the principal is to be distributed to settlor's issue then living, per stirpes.

Trusts "D" and "E" are to be equally funded from the residue of Trust "B" after the funding of Trust "C."

The income from Trust "D" is to be paid to settlor's daughter, Marjorie Gretz Rauch, for life, plus so much of principal as the corporate trustee should deem necessary for her adequate maintenance and support and the maintenance, education and support of her issue. Upon the death of Marjorie Gretz Rauch, the principal

of this trust is to be paid to and among her issue as she might by will appoint, and in default of such appointment to her issue then living, per stirpes, and in default of both appointment and issue to settlor's issue then living, per stirpes.

The income from Trust "E" is to be paid to settlor's son, Karl L. Gretz, for life, plus so much of principal as the corporate trustee should deem necessary for his adequate maintenance and support or the adequate maintenance, education and support of his wife and issue. Upon the death of Karl L. Gretz, the principal of this trust is to be paid to and among his spouse and issue as he might by will appoint, and in default of such appointment to his issue then living, per stirpes, and in default of both appointment and issue to settlor's issue then living per stirpes.

Paragraph Ninth of the said deed of trust provides:

"All principal and income shall be free from anticipation, assignment, pledge or obligations of beneficiaries; none shall be subject to attachment, execution or other legal process."

There were more and further provisions not here necessary to recite.

The amendment dated November 27, 1961, reads as follows:

"FIRST: In Paragraph FIFTH I provided for Trust 'B' and after the death of Helen B. Gretz for the division thereof into Trusts 'C', 'D' and 'E'. After the death of Helen B. Gretz, Trust 'E' is held for the benefit of my son, KARL LOUIS GRETZ, with certain gifts over.

"On November 1, 1961, I signed papers whereby I became liable to The First Pennsylvania Banking and Trust Company as co-maker on a note of William Gretz Brewing Company in the amount of $27,500 more or less. This was done as an accommodation to

my son, KARL LOUIS GRETZ. Prior to November 1, 1961, I also loaned KARL LOUIS GRETZ the sum of Twenty-five Thousand Dollars ($25,000). It is my wish and I so direct that the note or obligation of KARL LOUIS GRETZ in the sum of Twenty-five Thousand Dollars ($25,000) and also whatever I or my estate may have to pay to The First Pennsylvania Banking and Trust Company on account of the aforesaid note shall be charged first against any interest of KARL LOUIS GRETZ under my Will and, secondly, against the principal of Trust 'E' as provided in Deed of Trust dated February 17, 1961. It is my intent that the principal of Trust 'D', being a trust for my daughter, Marjorie Gretz Rauch, shall not be reduced in any way as a result of the said loan to KARL LOUIS GRETZ and the said obligation to The First Pennsylvania Banking and Trust Company. It is also my intent that Trust 'C' shall not be prejudiced by the said loan and obligation.

"I give the First Pennsylvania Banking and Trust Company, the Corporate Trustee, sole discretion to allocate assets after the death of Helen B. Gretz to Trusts 'C', 'D' and 'E', having the above principles and adjustments in mind."

Copies of the deed of trust and amendments, certified by counsel for the accountant to be true and correct, are annexed.

This accounting is filed by virtue of the death of Helen B. Gretz, income beneficiary, on November 12, 1972. Settlor died January 12, 1966. Mary Gretz, Marjorie Gretz Rauch and Karl L. Gretz are alive and have children and grandchildren as specified in the annexed family tree provided by counsel for the accountant.

By decree dated January 16, 1974, Samuel Kravitz, Esquire, was appointed guardian ad litem for minors

and trustee ad litem for persons unborn and unascertained having an interest in the trust. Mr. Kravitz recommends that the account be confirmed as stated. He also makes recommendations as to the funding of Trusts "C," "D" and "E" in his comprehensive report which is annexed. Mr. Kravitz requests compensation in the amount of $500 which is in accordance with the schedule of compensation for ad litems adopted by the court. The same is allowed hereinafter.

Problems have arisen re the funding of trusts "C," "D" and "E" and are presently before the court for decision. No testimony was offered by any of the parties. However, the following relevant facts are undisputed.

Karl L. Gretz was indebted to settlor on two demand notes. The first dated November 28, 1960, is for $20,000. The second dated July 12, 1961 is for $25,000.

On November 1, 1961, settlor co-signed with Karl L. Gretz a note of the William Gretz Brewing Co. to The First Pennsylvania Banking and Trust Company. Karl L. Gretz failed to pay the note and on June 5, 1962, the savings account of settlor at The First Pennsylvania Banking and Trust Company was charged $27,851.71 in full payment of the note.

Karl L. Gretz filed a voluntary petition in bankruptcy and was adjudged bankrupt in 1962. Settlor filed claims against the bankrupt's estate and received $53.62 on the above $27,851.71 loss, $117.95 on the above $25,000 note and $86.00 on the above $20,000 note. Eventually, settlor did receive further payments from the bankrupt's estate on the notes dated July 12, 1961 and November 1, 1961 leaving an unpaid balance on these two notes of $49,164.85.

Karl L. Gretz was left no interest in the estate of Charles W. Gretz, and, therefore, the aforesaid obligations could not be satisfied from estate assets.

The account value of this Trust "B" to be divided into and fund Trusts "C," "D" and "E" is $88,681.47 with a reappraised value of $104,381.31.

We must decide the legal effect of the above facts and the language of the amendment of November 27, 1961, as concerns the funding of the respective trusts.

Counsel for the respective parties have advanced certain propositions of law which are discussed hereinafter.

Our law is clear that a legacy by a testator to his debtor does not operate as a release or extinguishment of his (the debtor's) debt, unless it clearly appears that it was the intention of testator that it should so operate. Matlack's Appeal, 153 Pa. 402. The presumption of deductibility has been termed a general and well settled rule by our Supreme Court: Sharp v. Wightman, 205 Pa. 285.

It certainly seems that this presumption of deductibility or "right of retainer" should apply equally to trust situations, whether testamentary or inter vivos. Restatement 2d, Trusts, §251 A, states:

"Indebtedness of Beneficiary to Testator

"If a testator leaves property in trust and a beneficiary of the trust was indebted to the testator, the interest of the beneficiary in the trust estate is subject to a charge for the amount of his indebtedness, unless the testator manifested an intention to discharge the debt, or manifested an intention that the beneficiary should be entitled to enjoy his interest even though he should fail to pay his indebtedness." Neel's Estate, 207 Pa. 443, lends strong argument that this is the law of Pennsylvania.

Thus, it appears that if a beneficiary of a trust is obligated to the testator or settlor of that trust, there is to be deducted from the beneficiary's share the

amount of the obligation unless there is manifested a contrary intent on the part of the testator or settlor.

Karl Gretz has argued that when settlor inserted "spendthrift" provisions into the original deed of trust, the settlor intended to forgive Karl's obligation. Spendthrift trusts, whereby the interest of a beneficiary under the terms of a trust may not be alienated by the beneficiary or subjected to his debts and obligations, have long been recognized in this Commonwealth. Sproul-Bolton v. Sproul-Bolton, 383 Pa. 85; Sharp v. Wightman, supra, and Elwart's Estate, 52 Pa. Superior Ct. 321 espoused the theory that by inserting the spendthrift provisions, the testator intended the beneficiary to take free of any debt or charge, including any debts due the testator. Restatement 2d, Trusts, §251 A., comment b. states in part:

"b. Spendthrift trust. If it is provided in the will that the interest of the beneficiary should be free from the claims of his creditors and should not be assignable by him, the inference is that the testator intended that the beneficiary should be entitled to enjoy his interest even though he should fail to pay his indebtedness. This inference, however, may be overcome by evidence of a contrary intention."

Thus, it appears that if a testator or settlor, as the case may be, creates a spendthrift trust in favor of a beneficiary, any obligation owed by the beneficiary to the testator or settlor shall not be deducted from the beneficiary's share unless there is manifested a contrary intent on the part of the testator or settlor.

A question was raised as to the effect of the discharge in bankruptcy of Karl L. Gretz. We have been unable to find any case in this Commonwealth which directly deals with the question as to whether a discharge in bankruptcy will extinguish an indebtedness owed to a testator such that the indebtedness will not

be deducted from the beneficiary's share of the testamentary or trust estate.

It has been stated that a discharge in bankruptcy does not constitute payment, but rather it is analogous to a statute of limitations and does not cancel or extinguish the bankrupt's obligations, but simply bars any remedy for their enforcement or collection by legal proceedings: Zavelo v. Reeves, 227 U.S. 625. However, I note the language of the Supreme Court of Pennsylvania in Kravitz v. Povlotsky, 333 Pa. 75, a case dealing with the question of whether there had been a subsequent promise to pay a debt discharged by bankruptcy, wherein the court states at pages 77-8:

"As stated by the court below, a discharge in bankruptcy of a preëxisting debt is the absolute extinguishment of the obligation and not a mere bar of the remedy: Bolton v. King, 105 Pa. 78, 81; Hobough v. Murphy, 114 Pa. 358, 359; Murphy v. Crawford, 114 Pa. 496, 497. However, even though the debt be discharged, if a new express promise to pay is made, there is a moral obligation present which forms sufficient consideration to make the new promise binding."

The beneficiaries of Trusts "C" and "D" have directed our attention to decisions of other jurisdictions. In Sheridan v. Riley, 133 N. J. Eq. 288, it is stated:

"This so-called 'right of retainer' may be exercised by the executors or trustees against the debtor even where the remedy at law to collect the debt is barred by the statute of limitations. . . . It is not defeated by the bankruptcy of the debtor."

See also Shonberg v. Colton, 226 Iowa 68, and 31 Am. Jur. 2d, Executors & Administrators, §583. Thus, they have urged that a discharge in bankruptcy should be treated in the same manner as the running of the

statute of limitations and should have no bearing on the question of a charge against a distributive share.

The law in Pennsylvania on this issue is far from clear. In Light's Estate, 136 Pa. 211, our Supreme Court held not only that in the ordinary case the running of the statute of limitations will bar set-off, but also that the death of the creditor will not toll the statute from running. See also Sheppard Estate, 180 Pa. 57. These cases must be weighed against those cited by counsel: Gillingham's Estate, 220 Pa. 353; Gowen's Estate, 285 Pa. 219, and Eichelberger Estate, 135 Pa. 160.

Arguments have been presented that the debts owed should be considered "advancements." An advancement in its strict technical sense relates exclusively to cases of intestacy. It is an irrevocable gift by a parent to a child in anticipation of such child's future share of the parent's estate: Yundt's Appeal, 13 Pa. 575; Miller's Appeal, 31 Pa. 337.

The term advancement, however, has also been used in a popular or nontechnical sense, where the will directs that prior payments to beneficiaries shall be deducted from their shares. Testator may refer to such prior "advancements" in such a way as to require that they be taken into consideration in the distribution of his estate. Where it is testator's intention, as shown by will, to require such charge, deduction or accounting, or otherwise to require the consideration of advancements, such intention will be given effect: Wagner's Appeal, 38 Pa. 122; Mengel Appeal, 116 Pa. 292.

After examining the above doctrines and arguments, I must conclude that it is not a question of whether the debts are, or are not, collectible or whether they are deductible, or whether they are to be treated as advancements. The pivotal question is:

What was settlor's intent? A legatee (beneficiary) can take nothing until the terms of the will (deed of trust) are complied with: Gowen's Estate, 285 Pa. 219. For a legatee (beneficiary) is but a volunteer, at best, and must take the bounty of testator (settlor) upon the terms in which it is bestowed: Eichelberger Estate, 135 Pa. 160, 170-71. In Engemann v. Colonial Trust Co., 378 Pa. 92, our Supreme Court stated at pages 100-01:

"In Pennsylvania a person cannot create or establish a liability in another by a declaration in his will that the other party owes him a certain amount of money, nor is such a will admissible in assumpsit for the debt: Zimmerman's Executors v. Zimmerman, 47 Pa. 378; Eichelberger's Estate, 135 Pa. 160, 19 A. 1006. However, he can validly bequeath a legacy and provide that there shall be deducted therefrom a certain amount which the legatee owes him; and such a testamentary direction for the deduction of an alleged debt is conclusive on distribution, even though the testator was mistaken as to its existence or amount, or even though the debt was barred by the Statute of Limitations or by payment: Eichelberger's Estate, 135 Pa., supra."

In reaching my conclusion, I note the following chronology of events. Settlor first created a trust which did contain spendthrift provisions. Thereafter, he made a loan to and co-signed a note for Karl L. Gretz. Subsequent to all of the above, settlor executed the amendment of November 27, 1961, in which he specifically directed that if there was any loss on the two specifically enumerated transactions, such loss should be charged against the principal of Trust "E". Settlor has indicated his intent in clear, precise language. Settlor cogently ordered such a charge, and even though the effect thereof is to

totally obliterate the share of Karl Gretz, that specific intent must be followed. As the unpaid balance on the two specified notes exceeds the amount available to fund Trust "E", Trust "E" will not be funded.

As the share of Karl Gretz has been reduced to nothing, we need not reach the question as to the right of set-off of the $20,000 note of November 25, 1960, not specified in the amendment.

We now reach the question as to the proper funding of Trusts "C" and "D". Accountant believes that one-third of the principal should be awarded to Trust "C" and the remainder awarded to Trust "D". Mary Gretz, life tenant of Trust "C", argues that Trust "C" should be awarded one-half of the trust res. It is her position that the charge placed on Trust "E" by the aforementioned amendment is an advancement and, therefore, the doctrine of "hotchpot" will apply.

It seems quite apparent that the doctrine of hotchpot is entirely inapplicable in the present case. There is no "blending or throwing into a common lot or stock of property for equality of division." Cf. Laughlin Estate, 354 Pa. 43. Hotchpot is an equitable doctrine intended to bring about equality among heirs. However, where the intent of testator or settlor clearly expresses an intent for inequality, that intent must be followed: Davis' Estate, 346 Pa. 247.

One need only examine and compare the trust provisions to see that settlor never intended equality among the beneficiaries. Mary Gretz, income beneficiary of Trust "C" can receive, at most, $2,500 income per year; any excess over that amount is to be paid to settlor's issue. Further, at the death of Mary Gretz, the principal is to be paid over to settlor's, not Mary's issue. The beneficiary of Trust "D", Marjorie Gretz Rauch, receives all income without limitation. Further, she is granted a power of appointment over principal, and in default of the exercise of such power,

the principal is to pass to her, not settlor's, issue. Settlor's design for inequality becomes even more discernable if the principal of Trust "B", the trust now to be divided, amounted to a sum of very large proportions; in that event, Trust "C" would be funded only to a sum necessary to provide a net income of $2,500 per annum, whereas the other trusts would be of much greater size.

Thus, settlor has, in plain and unequivocal language, imposed certain restrictions and limitations on Trust "C", not so imposed on the other trusts.

Settlor has in clear and unmistakable language declared exactly how he wished the assets to be distributed and the separate trusts funded. His intent must be followed and no canons of construction are necessary to determine his meaning. Trust "C" will be funded with one-third of the res to be divided and distributed with the remainder of the res applied to the funding of Trust "D".

It is stated that notice of the audit was given to all parties in interest.

There were no objections to the account which shows a balance of principal of $88,681.47 which, less $500 to Samuel Kravitz for his services as guardian-trustee ad litem, is awarded as follows: one-third thereof to The First Pennsylvania Banking and Trust Company, trustee, in trust, for the uses and purposes specified in the deed of trust as pertains to Trust "C" for the benefit of Mary Gretz; two-thirds thereof to The First Pennsylvania Banking and Trust Company, trustee, in trust, for the uses and purposes specified in the deed of trust as pertains to Trust "D" for the benefit of Marjorie Gretz Rauch.

Item Seventh of the deed of trust directs that no accrued income shall be paid to the estate of any deceased income beneficiary.

Annexed hereto are waivers of income accounting

for the period prior to that stated in the account filed by the parties entitled thereto.

The account shows a balance of income of $6,398.57 which is awarded as follows: income accrued to and paid out as of November 12, 1972, to Marjorie Gretz Rauch and Karl L. Gretz. co-executors of the estate of Helen B. Gretz; one-third of the remainder of income to Mary Gretz and two-thirds of the remainder of income to Marjorie Gretz Rauch.

Payment and distribution is so decreed and leave is granted to the accountant to make all transfers necessary to effect distribution in accordance with this adjudication.

The above awards are to be subject to payments heretofore properly made on account of distribution.

And now, February 6, 1975, the account is confirmed nisi.